Curia, per
O’Neall, J.
The first objection to the plaintiffs’ title, which appears to have been sustained by the presiding Judge, in his charge to the jury, is-, that the grant of 4000 acres, dated 4th December, 1786, was, under the provisions of the Act of 1787, void, as a grant of surplus lands. The Act is as follows : “ That all grants, which have been obtained by any person or persons, for lands, situate, lying and being within the lines, buttings and bouiidings of former plats and grants, which are commonly known by the name of surplus lands, (except where the grant of such surplus land hath been made to the proprie *421 tor of such granted land,) be, and they are hereby declared to be, made null and void, to all intents and purpos'es whatsoever, and as if the same had never been granted.” P. L. 428. The Act clearly defines what it means by a surplus grant, to be a grant within the lines of an elder one. It was intended to remedy what was supposed to be susceptible of abuse, the procuring junior grants for so much of granted land as exceeded the quantity mentioned in the grant, but which was included within its lines, but-tings, and boundaries. Such an Act was wholly unnecessary, for the first grant clearly conveyed the whole of the land included within the lines, to the grantee, and the junior grant was void, because the grant had nothing to operate on and convey. The grant, in this case, is not within the “ lines, buttings and boundaries of former plats and grants,” and cannot be a grant of surplus lands. It includes, within its lines, some elder grants : and it must have been by confounding the Act of 1794, 1 Faust, 382, with the Act of 1787, that any doubt could ever have been entertained about the validity of the the plaintiffs’ grant.
Under the Act of 1794, the inclusion of granted lands, within the lines of a junior survey, does not render the grant void at law. It is still good for so much of the land as was vacant at the time it issued. Huggins vs. Brewer, 2 Bail. 25.
The next question which arises in the case, is, whether the fee of the land in dispute descended to the heirs at law of Col. William Thomson, or whether it passed, under his will, to his executors. There can be no necessity to reason about this question. It was decided, on the construction of the will of Col. Thomson, in the case of Haskell vs. House, 1 Tread. 106, that the fee in the lands now in dispute, was in his heirs, and not in his executors ; and in an exactly analogous case, Ferguson vs. King, 2 N. and McC. 588, it was held that the fee was in the heirs, and not in the executors. So that, if any point can be so settled as not to be even open for argument, it would seem to be the one under consideration. The land, it appears, was sold as the property of Col. Thomson, under a decree in Equity, in the case of Elnathan Haskell, Charles B. *422 Cochran, Bourdieu, Chollet and Bourdieu, vs. Jean Louis Raoul, and Caroline, bis wife, executrix of John Paul Thomson, who was the executor of Col. Thomson. It seems to have been supposed, on the trial below, that the purchaser at this sale could not protect his title against a previous adverse possession, by the minorities of the heirs of the grantee. I am at a loss to perceive the reason why the purchaser of an infant’s title should take a worse title than the infant had. If the legal estate in the lands was in the heirs of Col. Thomson, and that has passed by the sale, to the purchaser, I should think that he was placed, by his purchase, exactly in their situation. That the sale, under the decree, effectually passed the estate of the heirs, cannot admit of a doubt. The claim, for which it was ordered to be sold, was against the estate of the grantee, and to that suit, the executor and executrix of his executor, were parties.
The sale of the land under the decree was, therefore, the same as if a judgment had been recovered at law against the executor of the grantee, and it had been sold under execution. Such a sale has been ruled to convey the estate. It appeared that Col. Thomson died in 1796 ; one of his heirs, Eugenia Lewis, was about six years old at the time of his death. She was about seventeen years old at the death of her uncle, Col. Wm. R. Thomson, in 1807, who was one of the sons and heirs of the grantee. He left seven children, one of whom, Caroline, was in her fifth year at his death, and was in her twenty-fifth year at the death of one of his sons and heirs, John L. Thomson, in 1828, who left three children who are still minors. From this statement, It appears that for no period of five years from the death of Col. Thomson, were all of his heirs of full age ; and the question which arises, is, could the statute of limitations run against their title in favor of persons in possession of the land, under- color of title 'l Ever since my first acquaintance with the administration of-justice in this State, it was the settled opinion of the bench and the bar, that the minority of one of several co-tenants, would prevent the operation of the statute of limitations ; and I am satisfied that opinion is well founded in principle, *423 independant of its authority as a rule long acted upon. The individual interest of co-heirs or distributees in land, is co-extensive with the whole of it. They cannot be deprived of that general or common interest, but by partition. Each are entitled to the possession of the whole; and as against a trespasser in the action of trespass to try titles, which any one of them, according to the decisions in this State, can maintain, upon a recovery being had, would be entitled to the writ of habere facias possessio-nem of the whole tract. For the recovery of an undivided interest in the whole, would entitle the plaintiff to possession according to the recovery, and that must be a possession of the whole. The right of entry cannot be confined to any part, but extends to all and every part. By the Act of 1788, P. L. 455, infants are allowed 5 years after attaining to full age to prosecute their right or title to lands. As against an infant, the bar of the statute could not be effectual until this disability was removed, and he had attained to the age of twenty-six years. At any time during his minority, and until five years after full age, he has the legal right of entry on the land. If the right of entry of any one of the co-heirs remains, the legal title of the land is not defeated ; and it follows, that if it may operate to evict a trespasser from the whole of the laud, no title can be acquired by possession. I confess, that the strongest reason why the statute cannot run against co-tenants, where one of them is a minor, has been taken away in the case of co-heirs, by the anomalous practice allowed in this State, of permitting one of several co-heirs to maintain the action of trespass to try title. If the rule had remained, that all the co-tenants must join in the action, the minority of one, disabling him from suing, would, of course, in legal contemplation, prevent the commencement of an action until the disability was removed. But, notwithstanding this practice seems to treat the inheritance as being ■ susceptible of separate assertion, yet it was not followed up by any rule, that the interest of each should be regarded as separate, in fact or in law, so as that each should be successively barred as they attained to the age at which the statute would operate against them, *424 if each was seized in severalty. Notwithstanding one may maintain a separate action, yet all may join ; and this shews that the rule of practice was one of convenience merely, and was not intended to operate so as to make each interest an interest in severalty. The seisin of the co-heirs is in the whole tract, and their title is one ; and if the statute cannot defeat it as against all, it cannot against none. I am sensible that this rule may operate hardly in some cases. For it is possible, even for half a century, that successive minorities may prevent a posses-sory title from teing perfected. But in a question of property, fixed and acknowledged rules, not only known to the bar, but even to the whole community, and under which they both acquire and hold estates, ought not to be changed by the courts. Their decisions are to govern and apply to not only transactions hereafter to arise, but those which have been long past. A judicial decision is the declaration of what the law is, and not what it shall hereafter be. It belongs to the legislature to make the law, and to them, therefore, this rule, if it ought to be changed, must be committed. In the case of King ads. Ferguson, 2 N. & McC. 588, the testator died in 1786 ; the plaintiffs proved that they were the sons and children of sons of the testator, and that amongst them there had been a continued minority. The case was tried in 1820; the defendant had been in possession twelve years, under color of title. In the report of the case, it does not appear that any question as to the statute of limitations was made ; but I presume that it was one of the grounds to which Judge Richardson alludes when he says: “ There were several other grounds taken at the trial, and contained in the notice for a new trial, but being obviously untenable, were not relied on in the argument.” Even if the ground was not taken, in a case where some of the plaintiffs must have been of age for more than twenty years, it is pretty conclusive evidence that the rule, that the minority of any one of the co-heirs would prevent the operation of the statute, was considered by the bar of the middle circuit (of whom it may be justly said, that a question which ad *425 mits of any doubt, is never suffered to escape their investigation,) as too well settled to be shaken.
The extract from the Journals of the Senate, made by Mr. Davis, and given in evidence, was, I think, inadmissible. The clerks of the Senate and House of Representatives are the keepers of their respective records ; and an extract from the journals of either House, to be evidence, must be certified by the clerk. If that had been done on this occasion, and the search made for the petition being proved, and that it was not found upon the files of the house to which it was addressed, the extract from the journals would have been the next best evidence of its existence, and would have been admissible. But the extract not being certified by the clerk, was no evidence that there was any such entry on the journals.
The motion for a new trial is granted,
Johnson, J. concurred.