RICE v. BAMBERG.

1. RECORD—MINOR—SERVICE ON—JUDGMENT—JURY AND JURY TRIALS—CIRCUIT JUDGE.—There being no evidence to show that infants were served other than as disclosed in the record, the Court should have construed the legal effect of such service, and not submitted it to jury.

2. IBID.—IBID.—IBID.—PRESUMPTION.—A record showing service on minor by acceptance by mother is conclusive, and there can be no presumption that service was also made on the minor.

3. LIMITATION OF ACTIONS—LIFE TENANT—REMAINDERMAN.—Proceeding by life tenant, to which remainder is not a party, to sell lands devised to pay debts, does not so merge life title and that of remainderman as to commence the statute to run against remainderman before death of life tenant.

4. APPEAL—ADDITIONAL GROUNDS BY RESPONDENT.—In a case tried by a jury, there can be no such motion entertained from respondent as supporting judgment on additional grounds.

5. SALE made by sheriff under decree cannot be referred to execution found in the record.

Before GAGE, J., Bamberg, spring term, 1900.   Reversed.

Action for possession of land by Eugenia M. Rice against F. M. Bamberg.   From judgment for defendant, plaintiff appeals.

*Messrs. H. F. Rice* and *B. T. Rice,* for appellant, cite: *Court must have jurisdiction of infant to bind him:* 17 S.

C., 435; 23 S. C., 166; 24 S. C., 376. *Court will indulge in no presumptions against the record nor the averments thereof:* 34 Cal., 394; 45 Cal., 464; 46 Cal., 636; 13 Kan., 471; 4 Or., 313; 18 Wall., 336. *Life tenant cannot annihilate estate of remainderman:* Rich. Eq. Ca., 366; 25 S. C., 519; 16 S. C., 228; 53 S. C., 31; 56 S. C., 235; 1 Hill, 69; 17 S. C., 45; 25 S. C., 40. *Minority of one tenant will protect his cotenants:* 26 S. C., 180; *Reeves v. Bratton,* 36 S. C. *Court should have construed the record:* 53 S. C., 381.

*Mr. John R. Bellinger,* contra, cites: *Court is presumed to have obtained jurisdiction of minor until the contra appear:* 2 Sp., 81; 2 DeS., 459; Ril. Eq., 110; 10 Rich. Eq., 50; 37 S. C., 113; 54 S. C., 137; 35 S. C., 400; 19 S. C., 335; 11 Rich., 558; 54 S. C., 194. *Service of minor was a question of fact, and under confused state of record this was properly submitted to jury:* 50 S. C., 385; 57 S. C., 551. *Irregular judgment will not be vacated as of course at instance of minor:* 56 S. C., 108; 1 S. E. R., 480. *Sale by executrix under will would have passed good title, and she cannot claim any rights as widow inconsistent with her duty as executrix:* 15 S. C., 262; 21 S. C., 462; 10 S. C., 368. *Heir cannot claim by adverse possession against title descended: Wheeler v. Floyd,* 24 S. C. *The fee of plaintiff was that of contingent remainder:* 10 S. C., 376; Rice, 459; Dud. Eq., 115. *There was no feoffment and livery of seizin, but purchaser was put in possession, and on principle same rule should prevail:* 56 S. C., 235; 58 S. C., 382; 31 S. C., 113; 4 Rich. Eq., 475; 23 S. C., 502. *Plaintiff's cause of action would then be barred in ten years after attaining her majority:* Code, 98 to 108; 29 S. C., 372; 53 S. C., 128. *If necessary to protect interest of creditors the sale will be referred to execution:* 53 S. C., 367. *Doctrine of communis error facit jus should apply here:* 3 S. C., 308; 6 S. C., 459; 18 S. C., 339, 358; 10 S. C., 317; 19 S. C., 323.

March 15, 1901.   The opinion of the Court was deli-
,vered by

Mr. Justice Gary.   The plaintiffs brought this action to
recover possession of a tract of land.   The defendant an-
swered, denying all of the allegations of the complaint except
the allegation that the defendant is in possession of the land,
and setting up the following defenses: 1st, the statute of limi-
tations; 2d, adverse possession; and 3d, that he is a pur-
chaser for valuable consideration without notice.   This last
defense was not submitted to the jury, as it was properly
triable by the Court in the exercise of its chancery powers.

It appears from the testimony that John M. Whetstone
died July, 1870, leaving a will by which he devised his China
Grove plantation to his wife, Susan H. Whetstone, "to be
used and enjoyed by her during her natural life, and from
and after her decease, I give and devise the same to my
children, begotten of her; but should such children die with-
out lawful issue, then the same, after the payment of one-
fourth of the value of the land to my sister-in-law, Miss
Elizabeth Arnold, to my son, John Whetstone, and his heirs
forever."   The will, after specifying certain personal pro-
perty for the payment of debts, provides as follows: "and
should the proceeds prove insufficient to satisfy all the debts,
I give them (the executors) power to sell so much of my
real estate from the western portion of my plantation known
as China Grove, as will satisfy them all."   The testator
named his wife as executrix and others as executors of his
will, but she alone qualified.   The testator left surviving
him two children by Susan H. Whetstone—Eugenia M.
Rice, the plaintiff, who attained her maturity on the 13th
January, 1889, and a son named Adam, who was born in
1869, and died 14th March, 1896.   Mrs. Whetstone died in
November, 1898.   After the death of the testator, it was
discovered that his estate was insolvent, and his executrix
filed her complaint in 1871, to marshal the assets and sell
the real estate, including "China Grove," for the payment of
debts.   Under a decree in that case, "China Grove" was

divided and sold in parcels by the sheriff, except the dwelling and 200 acres of land, which were by a compromise agreement assigned to Mrs. Whetstone as a homestead, and this was confirmed by the Court. This homestead was occupied and enjoyed by Mrs. Whetstone and her two children until the death of her son; afterwards by her and her daughter until her death, and since that time by her daughter. At the time of the testator's death, there was a judgment against him, upon which the sheriff held an execution in active energy when he sold the land in dispute, and which was found in the record of the case to sell the land. The defendant traced his title through several successive occupants to the conveyance made by the sheriff, which was apparently regular and complete except as hereinafter mentioned.

In the record of the case of Susan H. Whetstone to sell the lands, there is no petition for the appointment of a guardian *ad litem* for the plaintiff herein and her brother, but such petition is referred to as being read and filed, and proof of due service thereof is recited in the order appointing the guardian *ad litem*. There is no record that the summons was served on the infants. There are two summons in the record, each appearing as an original. On the summons directed: "To the defendants, H. A. Smith, John C. Whetstone, Eugenia M. Whetstone and Adam W. Whetstone," is the following proof of service: "We acknowledge service of the within summons and a copy of the complaint in this action for the defendants, H. A. Smith and John C. Whetstone. Izlar, Dibble & Dibble, defendants' attorneys. September 23d, 1871. I admit the personal service of the within summons this 28 September A. D. 1871. J. C. Whetstone. Witness: L. H. Wannamaker." On the summons directed "To the defendants, Eugenia M. Whetstone and Adam W. Whetstone, infants, residing with their mother, the plaintiff, in the county and State aforesaid," is the following proof of service: "On the part and behalf of my infant children, the within named defendants, I accept service of this summons. S. Whetstone. September 27th,

1871." It is admitted that S. Whetstone is Susan H. Whetstone. The records in the case hereinbefore men-. tioned were for a time out of the clerk's office and in the hands of the attorneys. Upon search they could not at one time be found, as they had inadvertently been misplaced. The lands were sold under a consent decree, signed by the guardian *ad litem* of the infants, and the other parties to the action, and did not sell for enough to pay even the judgment creditors.

This action was commenced 7th March, 1899. The jury rendered a verdict in favor of the defendant. The plaintiff appealed upon exceptions, the first of which is as follows : "I.

That his Honor, the presiding Judge, erred in charging the jury, 'That is a question of fact for the jury to say whether the copy summons was delivered to the child,' in that : (a) That the only testimony or evidence as to the service of the summons in the case of Whetstone, executrix, *v.* Smith *et al.,* on the infants, was the judgment record in said cause; the legal effect of which record should have been construed by the Judge not the jury. (b) That said record, disclosing on its face the mode of service on said infants to have been an acceptance by their mother for them, no presumption could be drawn from the evidence that said service was made in any other or different mode. (c) There was no testimony tending to show that any other proof of service ever existed, other than that disclosed by the record." After stating the requirement of the law that a copy of the summons must be served upon the infant, his Honor, the presiding Judge, says : "The question that perplexes me is, whether this record must stand as conclusive proof that such a copy summons was not furnished to the child. I charge you, the record would be the highest evidence. If the summons was served upon the child, the law has been complied with, and you are the judges of that. The record must speak for itself as to what's here. I charge you that after a lapse of twenty-five years, and the record having been out of the custody of its proper keeper, that is,

the clerk of the Court, and you are satisfied that parts of it
are lost, and other parts absent, and if only parts of the
record have been recorded, as the law requires, then it is a
question of fact for the jury to say whether the copy sum-
mons was ever delivered to the child; and if they find it
was, then the child, Eugenia, was bound, the Court had
jurisdiction of that action.    If you find that a paper like this
was not given to her, then everything done was void.
While I say that this case was commenced in '71 or '73, more
than twenty-five years ago, I leave it for the jury to say if
this record has been out of the custody of its proper keeper,
and I leave it to the jury to say if parts of it have been lost
and certain parts not recorded, and I leave it to the jury to
say whether another paper, another summons, was once in
the record, bearing evidence of the service on the infants,
and was lost.    I don't know any authority for that, but I
think it is the justice of the case.    I freely confess to you
I am not bigoted in that opinion; but so far as I can find
the reason of the law, that ought to be the law if it ain't."
As a genearl rule, the legal effect of a record is to be deter-
mined by the Court upon inspection of the record without
resort to extrinsic testimony.    If a party to the action relies
upon the fact that the record is not complete, the burden is
devolved upon him to make a *prima facie* showing to the
satisfaction of the presiding Judge, by competent testimony,
that the part necessary to sustain his contention is lost.    In
this case there was no evidence whatever that the fact upon
which the defendant relied ever constituted any part of the
record, nor were there any facts proved from which this
could be legally inferred.    It is true, there was testimony
to the effect that the record was temporarily out of the cus-
tody of the proper officer in the hands of the attorneys, and
was inadvertently misplaced, but this does not make even a
*prima facie* showing of loss of a portion thereof, in the ab-
sence of evidence that the alleged missing part ever had exist-
ence.    The inference to be drawn from the facts is, that the
attorneys, who are officers under the law, did their duty by

returning the *entire* record to the proper custodian. There was no testimony adduced tending to show that the infants were served in any other manner than that stated in the record, and, therefore, its construction involved only a question of law to be determined by the presiding Judge. This exception is sustained.

The second exception is as follows: "II. That his Honor, the presiding Judge, erred in charging the jury, 'I leave it to you to say whether any other paper, another summons, was once in the record, bearing evidence of the service on the infants and was lost;' whereas, there was no testimony or evidence tending to show the existence or loss of such other paper or summons; nor could the presumption of the existence of such paper or summons arise in the face of the averments of the record of service." For the reasons stated in disposing of the first exception, there was error in submitting the question mentioned in this exception to the jury.

The appellant also contends that the presumption of the existence of such summons could not arise in the face of the averments of the record of service. In *Galpin* v. *Page,* 18 Wall, 350, the Court says: "But the presumptions which the law implies in support of the judgments of superior Courts of general jurisdiction, only arise with respect to jurisdictional facts concerning which the record is silent. Presumptions are only indulged to supply the absence of evidence or averments respecting the facts presumed. They have no place for consideration when the evidence is disclosed or the averment is made. When, therefore, the record states the evidence or makes an averment with reference to a jurisdictional fact, it will be understood to speak the truth on that point, and it will not be presumed that there was other or different evidence respecting the fact, or that the fact was otherwise than as averred. If, for example, it appears from the return of the officer, or the proof of service contained in the record, that the summons was served at a particular place, and there is no averment of any other service, it will not be presumed that

service was also made at another and different place; or if it appear in like manner that the service was made upon a person other than the defendant, it will not be presumed, in the silence of the record, that it was made upon the defendant also." The Court, in the case of *Hahn* v. *Kelly,* 34 Cal., 391, uses this language: "Undoubtedly, if the record was silent as to what was done in respect to some material matter, we will presume that what ought to have been done was done. If there is no proof of what was done in obtaining service, in the record, we will presume that legal service was, in fact, made; but when the record shows what was done for the purpose of obtaining service, how can we presume that something different was, in fact, done? * * * Suppose, in a case of attempted service, the officer should return that he had served the summons upon A. B., the son of the defendant, by delivering to him personally a copy and also a copy of the complaint, and the remainder of the record is silent upon the question of service. Could we presume, in the face of such a record, that he served it upon the defendant, also? Undoubtedly not * * * We consider the true rule to be that legal presumptions do not come to the aid of the record except as to acts or facts touching which the record is silent." In Black on Judgment, sec. 277, it is said: "If the record is silent as to jurisdictional facts, it will be aided by presumptions. But if it recites such facts, and the facts recited are not sufficient to confer jurisdiction, there can be no presumption that the recital is incorrect or incomplete." The record shows in what manner the infants were served with a copy of the summons, and there is no presumption that they were served in any other way. This exception is sustained.

The third and fourth exceptions will be considered together. They are as follows: "III. That his Honor, the presiding Judge, erred in charging the jury: 'The facts are for you as to whether Mrs. Sarah Arnold Whetstone did abandon her life estate, did wipe out her life estate, did by her acts and doings turn the whole title

over to others, and thereby merge the life estate into the remainder,' in that: (a) There was no testimony or evidence tending to show the meeting of the estate in remainder with the life estate of Sarah Arnold Whetstone either in the defendant or any one through whom the said defendant claims. (b) That the life tenant, Sarah Arnold Whetstone, could not 'turn the whole title over to others;' because there was no testimony or evidence tending to show that she ever acquired any other or greater estate than that given to her by the will of John M. Whetstone. IV. That his Honor, the presiding Judge, erred in charging the jury: 'I charge you if you believe these facts are so, then the statute would commence to run from that moment against the remaindermen, and if ten years have expired, her rights are barred;' whereas, the uncontradicted testimony and evidence showed that Mrs. Whetstone (the life tenant) had died only about two years previous to the commencement of this action, until which said event, to wit: the death of the life tenant, this plaintiff had no title to said lands devised to her in remainder by the will of John M. Whetstone, and described in the complaint herein." After stating to the jury the rule as to the statute of limitations, the Circuit Judge said: "But the counsel for Bamberg contend that there are limitations to that rule, and the limitations consist in this, that if she who has the life estate, to wit: the mother, and who has the right to enjoy it during her life and keep the daughter out of it, if she ignores it, does any act which kills it and wipes it out—for instance, undertakes to sell it to pay the debts of her husband and ignores her estate in it, and serves notice upon her child and the world that the title had been conferred along with the fee—then that wipes out the life estate, and at that moment the remainderman, that's the daughter, has the right to come into Court and ask that the property be turned over to her. Well, gentlemen, that's a difficult question, too. The facts are for you as to whether or not Mrs. Susan Arnold Whetstone did abandon her life estate, did wipe out her life estate, did by her acts and doings

turn the whole title over to others, and thereby merge the life estate into the remainder. I charge you if you believe these facts are so, then the statute could commence to run from that moment against the remaindermen, and if ten years have expired, her rights are barred. I frankly tell you I have grave doubts about that, too; but that's in accordance with the reason of the thing." The ruling of his Honor, the presiding Judge, was not in accordance with the provisions of sec. 108 of the Code, which is as follows: "Sec. 108. If a person entitled to commence any action for the recovery of real property, or to make an entry or defense founded on the title to real property, or to rents or services out of the same, be, at the time such title shall first descend or accrue * * * within the age of twenty-one years, the time during which such disability shall continue shall not be deemed any portion of the time in this charter limited to the commencement of such action or the making of such entry or defense; but such action may be commenced, or entry or defense made, after the period of ten years, and within ten years after the disability shall cease, or after the death of the person entitled, who shall die under such disability, that such action shall not be commenced, or entry or defenses made, after that period." There is another reason why the charge was erroneous. The law is well settled in this State that the statute of limitations does not commence to run against a remainderman until the death of the life tenant, and neither a conveyance by the life tenant, purporting to be in fee, nor proceeding in Court to which the remainderman is not a party, can affect the rights of the remainderman. *Bell* v. *Talbird,* Rich. Eq., 361; *Joyce* v. *Gunnels,* 2 Rich. Eq., 259; *Bannister* v. *Bull,* 16 S. C., 220; *Covar* v. *Cantelou,* 25 S. C., 35; *Moseley* v. *Hankinson,* 25 S. C., 519; *Rawls* v. *Johns,* 54 S. C., 394. These exceptions are sustained.

The fifth exception is as follows: "V. That his Honor, the presiding Judge, erred in charging the jury that the plaintiff was barred by the statute of limitations, because the uncontradicted testimony and evidence showed that A.

W. Whetstone, the younger brother of the plaintiff, was a tenant in common with the plaintiff, and that he died in the year A. D. 1894, and that his title to said lands was not barred by the statute of limitations at the time of his death, and would not be if he were now living." This exception seems to have been taken under a misapprehension, as the record does not show that his Honor so charged.

The respondent's attorney served the following notice: "Please take notice, further, that if the Court should be unable to sustain the judgments upon other grounds to be discussed, the undersigned will ask that it be sustained upon the grounds that the sale in Whetstone *v.* Smith *et al.*, might be referred to the authority of the execution in the sheriff's hands, and upon the further ground that the irregularity complained of, if it existed, was in accordance with the practice which had prevailed in the old Court of Equity, and under the Code from its adoption was a common error, and the same should be sustained under the maxim, *communis error facit jus;* and upon the further ground that the plaintiff holding and claiming the 200 acres under the judgment in Whetstone *v.* Smith *et al.*, is estopped thereby from denying validity to the other terms of said judgment." In the case of *Bishop* v. *Bonham,* 23 S. C., at page 105, the Court says: "The additional grounds upon which the respondent seeks to sustain the judgment below, notwithstanding there may have been error in the charge, cannot be considered. While it is true that a judgment below, in a case tried by the Court, may be affirmed upon other grounds than those upon which the Circuit Judge placed it, the same is not true of a case tried by a jury. If erroneous instructions have been given to the jury, we cannot know that the conclusion reached by the jury was not the result of such instructions * * * It is true, that there may be a case in which, in any view of the facts, the plaintiff could not recover, and if in such a case there should be some erroneous instructions, the judgment below might be sustained notwithstanding such erroneous instructions."

The sheriff did not sell under the execution, but under the order of the Court. The sale could not, therefore, be referred to the execution. *Bolivar* v. *Zeigler*, 9 S. C., 287.

The second ground upon which the respondent relies involves a question of fact and, of course, cannot be considered by this Court.

The third ground cannot be sustained, as the record does not show that the plaintiff bases her title on the facts therein stated.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for further proceedings.