13844

BOLT *ET AL*. v. SULLIVAN

(174 S. E., 491)

*Messrs. O. L. Long* and *Hunt & Clarkson,* for appellant,

*Mr. R. E. Babb,* for respondent,

May 4, 1934.

The opinion of the Court was delivered by MR. JUSTICE BONHAM.

Edmond Bolt, late of Laurens County, died the 15th day of September, 1868, leaving of force his last will and testament, which was admitted to probate in the office of the Probate Judge for Laurens County, September 30, 1868. He left, him surviving, as his legatees and devisees, his sons, Andrew, Hiram, Isham, and Dorroh, and his daughter, Larrissy. There were other children named and provided for in the will, but they are not interested in this litigation.

The provision of the will which it is necessary to consider in the determination of the issues involved in this contro-

versy is as follows: "It is. my will that after my death, the land whereon I now live shall not be sold but shall be occupied and used by my sons Andrew, Hiram, Isham and Dorroh Bolt equally and in the event of their death or either of them, their lawful children shall inherit their father's part and live thereon, but in no case shall either of my above named sons sell or dispose of his distributive share of said land except to one another—one may sell his share to the other but to no person else. It is my Will also that my daughter Larrissy Bolt, who now lives with me, shall have a home on said lands so long as she may live or remain single and after her death or marriage her children Mary, Edmond and Nancy shall have an equal share of said land with the children of my sons above named. I also desire that my said daughter and her children above named, shall be cared for and protected by my sons Andrew, Hiram, Isham, and Dorroh and that they shall see that said children are properly educated and raised."

It appears that the Judge of Probate at the instance of the administrators (with will annexed doubtless) appointed G. W. Sullivan, F. M. Willis, and R. S. Goodgion commissioners and appraisers of the lands of Edmond Bolt. Whether they were directed to partition as well as appraise the land does not appear from the record. Be that as it may, they, on October 30, 1868, made "the following return of the appraisement and division of the real estate of the said Edmond Bolt, deceased." They valued the whole tract of 440 acres at $2,100.00 and divided it into four tracts. Tract No. 1, of 84 acres, was valued at $504.00, and allotted to Andrew Bolt; tract No. 2, of 130 acres, was appraised at $420.00, and was assigned to Larrissy A. Bolt; tract No. 3, of 151 acres, was valued at $501.00, and was assigned to Dorroh Bolt; tract No. 4, of 75 acres, was valued at $675-.00, and allotted to Hiram Bolt. Isham Bolt desired his interest in money; accordingly the commissioners fixed the value of his interest at $420.00, which they directed should be paid by Andrew, Hiram, and Dorroh "in due proportion."

Andrew, Hiram, and Larrissy each entered upon and occupied the land allotted to each until the death of each, when the child or children of each of them entered upon and possessed the land of their respective parents.

Dorroh likewise entered upon the possession of the land allotted to him and lived upon it for a number of years. Isham moved away from that county, and has not been heard from in many years. He never married, so far as his people know, and he is supposed to be dead.

W. D. Sullivan became possessed of the Dorroh Bolt tract. He conveyed it to Felicia and J. G. Sullivan by deed dated April 27, 1881; Felicia Sullivan conveyed her interest therein to J. G. Sullivan by deed dated January 24, 1890. The manner by which W. D. Sullivan acquired possession is not made clear by the record. The defendant introduces in evidence a deed from Cullen Lark and John W. Fowler, dated September 9, 1889, conveying "all their right, title and interest in and to" a tract of land in said State and county containing 66 acres, "being the said tract of land purchased by us at the delinquent tax sale of Isham Bolt."

Also a deed from C. L. Fike, Sheriff of Laurens County, to W. D. Sullivan, dated March 4, 1878, to 50 acres in Laurens County adjoining lands of Mrs. Larrissy Bolt, Clayton Kilgore, and others; this deed recites that this land was sold by the Sheriff under execution issued against Dorroh Bolt by Isham Bolt on a judgment recovered in the Court of Common Pleas.

Also a deed from C. Lark, County Auditor, to J. W. Fowler and C. Lark, in behalf of the State of South Carolina, to a tract of land in Sullivan Township, Laurens County, described as part of the land of Isham Bolt sold for delinquent taxes in 1873. The number of acres is not given. However, the referee to whom the case was referred has found that the tract sued for is the Dorroh Bolt tract, and the Circuit Judge concurs in his finding, and, since there is no appeal from such finding, it becomes the law of the case.

Dorroh Bolt died in 1929, intestate, leaving, him surviving, as his only heirs-at-law, his sons, B. F. Bolt and W. E. Bolt, and his daughter, Mrs. J. L. Davenport. They commenced this action in March, 1930, against W. D. Sullivan and J. G. Sullivan to recover possession of the tract of land known as the Dorroh Bolt tract, assigned to Dorroh Bolt by the commissioners and appraisers of his father's lands.

Since the commencement of the action W. E. Bolt and W. D. Sullivan have died. W. E. Bolt left no wife nor child, and the plaintiffs, B. F. Bolt and Mrs. J. L. Davenport, are his only heirs-at-law. W. D. Sullivan was only a nominal defendant, and no representative of his estate has been made a party to the action in his stead.

The complaint sets out the will of Edmond Bolt; the appraisement and division of his 440 acres and the allotment of tract No. 3, containing 151 acres, to Dorroh Bolt, who took under the will of his father a life estate therein. That the plaintiffs as the children of Dorroh Bolt and the grandchildren of Edmond Bolt are entitled to the possession of this tract of land which is now in the possession of the defendant, J. G. Sullivan, who unlawfully withholds the possession thereof from the plaintiffs.

The answer, for a first defense: Denies any knowledge or information sufficient to form a belief as to the allegations of Paragraphs 1, 2, 3, and 4 of the complaint.

For a second defense: Admits that J. G. Sullivan is in possession of some lands of less acreage than the tract described in Paragraph 5 of the complaint, and alleges that he is in possession of such land as owner in fee simple, and he denies that plaintiffs have any interest in this land, and denies that it is the land described in the complaint.

For a third defense: It is alleged that, if the defendant is in possession of any of the lands described in the complaint, it is as owner in fee simple, and he has held, occupied, and used, cultivated, and improved the place for a period of ten, twenty and forty years openly, notoriously, and adversely to the interest of any other persons.

The case was referred to R. W. Wade, Esq., to take the testimony and decide all issues of law and fact. He filed his report December 1, 1932. He found "that the plaintiffs were entitled to a one-fifth undivided interest in the lands involved."

Exceptions to the report were heard by Judge Sease, who filed his decree May ...., 1933. He said: "Construing the Referee's Report to mean that he finds that the plaintiffs are entitled to a one-fifth interest in the tract of land involved in this action, I am constrained to affirm his report."

The plaintiffs appeal from the circuit decree upon two exceptions which their counsel discuss under two heads, to wit: (1) Did the Circuit Judge err in holding that plaintiffs are entitled to only a one-fifth interest in the tract of land in dispute? (2) Did the Circuit Judge err in holding that the partition and division of the Edmond Bolt lands by the life tenant was not ratified and confirmed by each set of remaindermen after the death of their parents?

We will first consider the second proposition.

The testimony shows beyond doubt that Andrew Bolt, Hiram Bolt, and Larrissy Bolt went into possession of their respective allotments of land and remained thereon till they died, and their children as remaindermen went into possession thereof. Isham Bolt took money instead of land; he never married and is dead so far as the record discloses. Dorroh Bolt likewise went into possession of his assigned tract of land until ousted by some sort of legal process not clearly disclosed by the record.

The referee found, and the Circuit Judge concurred with him, that Larrissy Bolt took a life interest under her father's will, but that Andrew, Hiram, Dorroh, and Isham took a different estate, for the reason that the will gave them the power to sell their interest. The will distinctly restricted the right of the devisees to sell only to one another, and that provision is manifestly in furtherance of the evident intention of the testator that his land should

descend to the children of his children. Each of the named devisees took a life estate and could dispose of nothing more.

The special referee held that, if the devisees took a life estate, they could by the partition made dispose only of their life interest and could not by their action dispose of the rights of the remaindermen in the entire tract of 440 acres. The Circuit Judge concurred. This ruling loses sight of the fact made plain by the evidence, that the children of Larrissy, Andrew, and Hiram acquiesced in and ratified that partition by going into possession and ownership of the lands allotted their respective parents and are now estopped to deny the legality of such partition.

Children, during life of life tenant, and with her consent, may partition land among them, and the child occupying the part allotted is estopped from claiming any part of the portion allotted to another child. *Gibson v. Fuller,* 74 S. C., 535, 54 S. E., 778.

"A parol partition is binding upon the parties if there is sufficient proof of part performance to take it out of the Statute of Frauds; and actual possession is the most satisfactory evidence of part performance." *Kennemore v. Kennemore,* 26 S. C., 251, 1 S. E., 881.

"Where the parties in interest orally make partition * * * and retain for eleven years exclusive possession of the portion so assigned to them respectively in severalty, the court will sustain the partition." *Rountree v. Lane,* 32 S. C., 160, 10 S. E., 941.

It is clear that it was error to hold that the division of land made by the commissioners, accepted by the life tenants, acquiesced in by the remaindermen, was not binding on the remaindermen and their successors.

There was, therefore, no authority for the holding on this ground that the plaintiffs are entitled only to an undivided one-fifth interest in the lands in dispute, which the special referee and the Circuit Judge have found is the Dorroh Bolt land now in the possession of the defendant, J. G. Sullivan.

What, then, remains in the way of the declaration of the law that the plaintiffs are entitled to the possession of the land which they claim?

It is settled that Dorroh Bolt took the disputed land as life tenant under the will of his father, Edmond Bolt; that the life tenancy of Dorroh Bolt was terminated by his death in 1929; that the plaintiffs are his children, and that they alone are entitled to claim under him.

The defendant interposed the defense that he has the rightful possession of the land as owner in fee simple under the deeds which he has introduced which predicate his title upon the purchase at tax sale of the lands of Isham Bolt, and the sale of lands of Dorroh Bolt under an execution issued under a judgment of Isham Bolt against Dorroh Bolt. As to the claim of title under the tax sale, the deed recites that lands of Isham Bolt were sold for delinquent taxes. It is certain that in the partition of the lands of Edmond Bolt, that Isham Bolt did not receive any of the land, but took money instead. There is utterly lacking any evidence that the deed thus relied upon conveyed land which was received by Isham Bolt under his father's will and which he sold to Dorroh Bolt.

However, if it be conceded that it was such land, it has been determined that the children of Edmond Bolt took a life estate in the land devised to them; therefore the failure of the life tenant to pay taxes on the land could not alter or affect the rights of the remaindermen in the land.

Section 2567, Civil Code 1932, provides that: "Every person shall be liable to pay taxes and assessments on the real estate of which he or she may stand seized in fee or for life, by curtesy, in dower, as husband in right of his wife, or may have the care of as guardian, executor, trustee or committee."

"A life tenant is required to assess the land in his possession as such and upon his default in paying taxes only his

interest in the land can be sold under execution against him." *Taylor v. Strauss,* 95 S. C., 295, 78 S. E., 883.

"Under the statutes of this state it is well settled that the duty is on the life tenant to pay the taxes and that the interests of remaindermen are not affected by reason of the failure of the life tenant so to do. It is also well settled that no taxes may be assessed against the interests of remaindermen during the existence of the life estate, the reason being that the Legislature supposed the value of the life estate would be sufficient to satisfy the taxes and it was the intention under our statute to protect the rights of remaindermen and not allow them to be sacrificed where no necessity therefor exists." *Campbell et al. v. Williams et al.,* 171 S. C., 279, 172 S. E., 142, 145.

The claim of title by defendant founded upon the tax deed must be denied.

Defendant claims the protection of the Statute of Limitations because he and his predecessors in title have been in possession for more than the ten- twenty- or forty- year periods prescribed by the statute, sometimes spoken of as the statute in aid of quieting title.

The plea would be effective if aimed at the former owner of the fee. But it cannot avail against the remainder of the life tenancy unless it be shown that the life tenancy has expired at such period as to give currency to the statute against the claim of the remaindermen.

"The grantees of Mrs. Goodwin could not hold adversely against the remaindermen or the trustee for them until the termination of the life estate of Mrs. Goodwin." *Breedin v. Moore,* 82 S. C., 534, 64 S. E., 604, 606.

"The law is well settled in this state that the statute of limitations does not commence to run against a remainderman until the death of the life tenant; and neither a conveyance by the life tenant purporting to be in fee, nor a proceeding in court to which the remainder-man is not a party, can affect the rights of the remainder-man." *Rice v. Bam-*

*berg,* 59 S. C., 507, 38 S. E., 209, 212, citing in support: *Bell v. Talbird,* Rich. Eq. Cas., 361; *Joyce v. Gunnels,* 2 Rich. Eq., 259; *Bannister v. Bull,* 16 S. C., 220; *Covar v. Cantelou,* 25 S. C., 35; *Moseley v. Hankinson,* 25 S. C., 519; *Rawls v. Johns,* 54 S. C., 394, 32 S. E., 451.

"Where life estate was freed and discharged from trust, one holding under life tenant could not hold adversely to trustee and remaindermen for whom he held title until death of life tenant." *Kirton v. Howard,* 137 S. C., 11, 134 S. E., 859, 860.

It is uncontradicted that the life tenancy of Dorroh Bolt to the land in dispute did not fall in until his death in 1929. It follows from this fact and the authorities cited that defendant's claim of title by adverse possession must fail.

Counsel for defendant earnestly argues that defendant's title is derived from the sale of land under the execution of the judgment of Isham Bolt against Dorroh Bolt. The evidence falls far short of showing that the 50 acres sold under this judgment constituted a part of the land which Dorroh Bolt took under the division of the lands of Edmond Bolt. But, it is argued, it was the land which Isham Bolt sold to Dorroh Bolt. The record shows that no land was allotted to Isham. He took his interest in money. But it may be said that, if he had taken land and had sold it to Dorroh, he could only sell the life estate which he would have taken under the will of Edmond Bolt, and only that interest could have been sold under the judgment.

Defendant's counsel argues, that the special referee and the Circuit Judge having found that the plaintiffs are entitled to recover only one-fifth interest in the lands, this Court cannot disturb the finding. The position is untenable. This was not a finding of fact, but a conclusion of law, which is reviewable by this Court.

The judgment of the Circuit Court is reversed, and the case is remanded, with directions to enter judgment for plaintiffs for the possession of the land in dispute, under Rule 27.

Mr. Chief Justice Blease, Messrs. Justices Stabler and Carter, and Mr. Acting Associate Justice W. C. Cothran concur.