0803

Blanche McLeod CURTIS, Sue McLeod Perkinson and Lillian McLeod Youngblood, Appellants v. Edgar Green DESCHAMPS, Jr., William Wayne DesChamps, Wallace DesChamps, William Green DesChamps, Jr., Mary Hayes Calhoun Owings, Warren Calhoun, Jr., Zelene Gray DesChamps Hood and Carolyn DesChamps Blackford, Defendants, of whom Mary Hayes Calhoun Owings, Warren Calhoun, Jr., and Zelene Gray DesChamps Hood are Appellants, and Wallace DesChamps, William Green DesChamps, Jr., Carolyn DesChamps Blackford, Edgar Green DesChamps, Jr., and William Wayne DesChamps are Respondents. Appeal of Mary Hayes Calhoun Owings, Warren Calhoun, Jr., & Zelene Gray DesChamps Hood.

(350 S. E. (2d) 201)

Court of Appeals

*Watson L. Dorn, Callison, Dorn & Thomason,* Greenwood, *Philip Wilmeth, Wilmeth & DeLoach,* Hartsville, *Horace L. Bomar, Holcomb, Bomar, Wynn & Gunn,* Spartanburg, *for appellants.*

*William W. DesChamps, Jr.,* Myrtle Beach, *Jacob H. Jennings, Jennings & Jennings,* Bishopville, and *Edward P. Perrin, Perrin, Perrin, Mann & Patterson,* Spartanburg, *for respondents.*

Heard March 18, 1986.

Decided Oct. 6, 1986.

GARDNER, Justice:

In August 1921, the parents of the parties to this action partitioned and divided among themselves 887 acres of land. At the time of the partition the parents apparently believed they could convey one to the other fee simple title to the parcels of land respectively received by each in the partition. But, only 428 acres of the land (estate property) were owned

in fee by the partitioners; title to 459 acres[1] of the land (trust property) was, perforce of a trust deed, owned by the partitioners for life, with remainder *per stirpes* in fee to the partitioners' children, the parties to this action. By the partition and division two of the original partitioners received only estate land, two received part trust land and part estate land, and two received only trust land. In 1980 Sue D. McLeod, the last of the original partitioners and parents to the parties of this action, died; her children instituted this partition action against their first cousins. The appealed order held, *inter alia,* that, upon the death of the parents, title to the trust property vested *per stirpes* in the parties to this action and rejected claims of adverse possession, presumption of grant and title under the 40 year adverse possession statute. We affirm.

Unfortunately neither the facts nor the law of the case lend themselves to brevity, but when taken in sequence, the decision we reach is consonant with the appealed order.

## FACTS AND PRELIMINARY DISCUSSION

In 1899 W. W. DesChamps executed a trust deed; in pertinent part it provides:

> Know All Men By These Presents, That, I, William W. DesChamps in the State aforesaid in consideration of the sum of ten dollars to me in hand paid by William B. McLeod as Trustee (the receipt whereof is hereby acknowledged), and in consideration of the desire on my part to provide for my children, and grandchildren, have granted, bargained, sold and released and by These Presents do grant, bargain, sell and release unto the said William B. McLeod, the following described lands situate in said County and State, to wit: [the land described] Together With all and Singular the Rights, Members, Hereditaments and Appurtenances to the said Premises belonging or in anywise incident or appertaining *To Have And To Hold All And Singular* the said premises before mentioned unto the said William

---

[1] Three hundred five additional acres of trust property (swamp land) were not involved in the 1921 partition; no one contends that the title to this swamp land is before the Court.

B. McLeod as Trustee and his heirs *Upon The Following Trust And Limitations, To Wit:*—to permit me, the said W. W. DesChamps, to occupy and use all of said premises for and during the term of my natural life, . . . then to stand seized and possessed of the same to and for the use and benefit, for life, of Edgar Green DesChamps, Alice Blanche DesChamps, Lottie M. DesChamps, William G. DesChamps, Lidie Lee DesChamps, Sue Brown DesChamps, and Carroll DesChamps, my children now living, with remainder upon the death of any or either of them to the issue of his, her or their body or bodies and their heirs and assigns forever; and in the event of the death of any of my said children above named without issue alive then the share of such child or children so dying without issue to immediately vest in the survivor or survivors of my said children hereinbefore named.[2] *And Upon The Further Trust,* that upon the written direction of myself, the said W. W. DesChamps, to set off to any of my children hereinbefore named or to any of their said issue such part or parts of the above described premises as I wish alloted [sic] to them under the terms of this deed; *And Upon The Further Trust,* to make such allotments as I may direct by my Last Will duly executed, should I fail to make such written direction during my lifetime. *And Upon The Further Trust* and with full power, upon my written request to be endorsed upon this deed or by a separate writing to be witnessed by two persons and recorded, to sell and convey in fee simple with covenants of warranty, the whole or any part of said premises, the proceeds of such sale to be reinvested in such property as I may designate such reinvestments to be held under the same trusts and limitations as are set forth in the foregoing deed. *And Upon The Further Trust* and with

---

[2] Lottie M. DesChamps predeceased her father; neither the Supreme Court in *First Carolinas Joint Stock Land Bank v. DesChamps,* 171 S. C. 466, 172 S. E. 622 (1934), nor any of the parties to this action has suggested that her death affected title to the subject property. Apparently all have assumed that this one-seventh interest was merged on a like basis of title with that of the surviving children and grandchildren of W. W. DesChamps; we, therefore, do not address this.

full power upon my written request endorsed on this deed or made by a separate writing to be signed in the presence of two witnesses and to be duly recorded to mortgage all or any part of said premises for the purpose of paying off the present existing mortgages upon said premises and for no other purpose, but for such purpose to mortgage as often as may be necessary. *And Upon The Further Trust* that in the event of my death before the settlement and discharge of all existing mortgages and charges upon said premises, that the entire income rents and profits arising from said premises shall be devoted, if so much be necessary, to the settlement of such existing mortgages and charges . . . .

W. W. DesChamps died testate on January 12, 1921; the pertinent parts of his will are:

V. All of the rest, residue and remainder of my estate, including any reversion or remainder real, personal, mixed, money and credits, I give, devise and bequeath unto my children in equal proportions, and should any of my children predecease me leaving a child or children, the share to which such child would have been entitled had he or she survived me, I give in equal proportions to the child or children of such predeceased child, and should my wife predecease me, all of my estate of every kind shall be disposed of as is directed in this paragraph.

VI. I have a valuable tract of land at Wisacky, and my children have real estate which will come into their possession after my death, and situated not very far from the land at Wisacky. It is my desire that in dividing their lands among themselves, they will have reference to this tract of land, and so allot it as to use it in connection with their other lands, and if it be more than the share which will fall to any one of my children, in that event, it is my desire that some one or more of my children will take this land and have an accounting as between themselves for its value. I do not know how to allot it to any one or more of them, and hence it must pass as a part of my estate, but I am mindful of the fact that it lies so close to the other lands referred to, that in

making the division of all the lands as between them-selves, their interests can be best subserved by taking this land into consideration.

In making this statement, I am mindful of the fact that I cannot change the status as to the lands to which they will be entitled.

The following is an exposition of the disposition to the various parties by the 1921 partition by W. W. DesChamps' children, together with the list of their children. The grand-children whose names are in boldface are appellants. The grandchildren whose names are underlined are respondents. Carolyn D. Blackford is not participating in this appeal; she sold her interest to Wallace P. DesChamps. Wallace P. Des-Champs also purchased the interest of William G. Des-Champs, Jr.; this despite the fact that he is shown as participating in this appeal.

| FATHER | CHILDREN | GRANDCHILDREN |
|---|---|---|
| | (Property Received in Partition) | |
| W. W. DesChamps (died 1921) | Edgar DesChamps (died 1960) 157 acres Estate Property | Edgar G. DesChamps, Jr. William W. DesChamps Wallace P. DesChamps |
| | William G. DesChamps (died 1948) 152 acres Estate Property | Wm. G. DesChamps, Jr. |
| | Lidie DesChamps (died 1932) 135 acres Trust Deed Property | **Mary H. C. Owings** **Warren Calhoun, Jr.** |
| | Sue DesChamps McLeod (died 1980) 90 acres Trust Deed Property 45 acres Estate Property | **Blanche M. Curtis** **Sue M. Perkinson** **Lillian M. Youngblood** |
| | Carroll DesChamps (died 1970) 200 acres Trust Deed Property | Carolyn D. Blackford **Zelene G. DesChamps** |

Alice DesChamps        No Children
(date of death not
shown)
56 acres Estate Property
52 acres Mixed Estate
Property and Trust Deed
Property

## PREVIOUS LITIGATION AND LEGAL BACKGROUND

After the 1921 partition, Carroll D. DesChamps mortgaged the land partitioned to him and covered by the above-mentioned trust deed to the First Carolinas Joint Stock Land Bank. The mortgage was later foreclosed and the land conveyed to the bank. The bank instituted an action to determine the title of the property it had purchased through the mortgage foreclosure; this action resulted in the decision of *First Carolinas Joint Stock Land Bank v. DesChamps*, 171 S. C. 466, 172 S. E. 622 (1934).

*First Carolinas Joint Stock Land Bank* holds (1) that the rule in Shelley's case is not applicable; (2) that a fee conditional estate is not granted by the use of the word "issue" in the trust deed of W. W. DesChamps; that the word "issue" means children; (3) that W. W. DesChamps' Last Will and Testament does not allot the land under the trust; and (4) that Carroll DesChamps received only a life estate perforce of the 1921 partition by the children of W. W. DesChamps.

*First Carolinas Joint Stock Land Bank* also contained the following:

> In view of the foregoing provisions of the trust deed and of the decisions cited, I am convinced that in the clause of the trust deed limiting a life estate to his children with remainder to their issue and their heirs and assigns forever, the grantor did not use the word "issue" in the technical sense of all future generations, that the rule in *Shelley's case* does not apply, and that *the issue takes as purchasers after the death of the life tenants.* This construction gives full effect to the intention as expressed in every part of the deed. [Emphasis ours.]

> The reason for this holding is that the trust deed provides that after W. W. DesChamps' death, the trustee is then to stand seized and possessed of the

same to and for the use and benefit, for life, of his named children, "with remainder upon the death of any or either of them to the issue of his, her or their body or bodies *and their heirs and assigns forever.*" This language not only supports the hypothesis that the grandchildren were vested as purchasers with fee simple title as remaindermen in the trust property but, we hold, the words "and their heirs and assigns forever" also designate the point at which the trust created by the trust deed terminates. The trust was therefore by the trust deed itself terminated at the death of W. W. DesChamps' children; his grandchildren by the trust deed were granted fee simple *per stirpes* estates to the remainder estate of the subject property and we so hold.

The parties of this action have stipulated that those children of W. W. DesChamps who received estate lands in the 1921 partition acquired fee simple title to these estates. Additionally, all of the parties except Zelene Gray DesChamps Hood have stipulated "that Lidie DesChamps Calhoun died on May 15, 1932, and that thereafter Mary Hayes Calhoun Owens [sic] and Warren Calhoun, Jr. went into possession of the said land setoff, allotted, or partitioned to her, and have farmed, leased and paid taxes on the same for over 50 years, and otherwise exercised and evidenced all of the incidents of ownership in fee simple since May 15, 1932."

## ISSUES

With the above backdrop, we address the issues of merit presented by this appeal, which are whether: (1) the children of Lidie DesChamps, appellants Mary H. C. Owings and Warren Calhoun, Jr., since 1932 have acquired title to the 135 acres allotted to Lidie DesChamps in the 1921 partition by either adverse possession, presumption of grant or the 40 year statute, Section 15-3-380, Code of Laws of South Carolina (1976); (2) the other remaindermen under the trust deed are estopped or barred by laches from claiming any interest in the land set off to Lidie DesChamps Calhoun and occupied by her two children since her death in 1932; and (3) the remaindermen acquiesced in the 1921 partition and/or ratified it so that the partition agreement vested fee simple title in those receiving trust estates.

I.

The children of Lidie DesChamps, Mary H. C. Owings and Warren Calhoun, Jr., allege that since the death of Lidie DesChamps in 1932, they have occupied continuously, hostilely, adversely, notoriously and exclusively the 135 acres of trust property allotted to Lidie DesChamps by the 1921 partition. They claim title by adverse possession for 10 years, by presumption of grant, and under the 40 year statute.

Plaintiffs' title by adverse possession requires proof ■ of actual, open, notorious, hostile, continuous, and exclusive possession by the claimant, or by one or more persons through whom he claimed, for the full statutory period. *Crotwell v. Whitney,* 229 S. C. 213, 92 S. E. (2d) 473 (1956). It is well established that adverse possession does not run against a remainderman until the death of the life tenant. *Phipps v. Hardwick,* 273 S. C. 17, 253 S. E. (2d) 506 (1979). This same rule applies to the 40 year statute. *Stamper v. Avant,* 233 S. C. 359, 104 S. E. (2d) 565 (1958); *see Phipps v. Hardwick, supra.* Similarly, presumption of grant will not be acquired against a remainderman who is unable to assert his rights because of an intervening life estate until the life estate is extinguished and the remainderman is entitled to possession. *See* 10 S.C.L.Q. 292, 302 (1958) (citing *Bolt v. Sullivan,* 173 S. C. 24, 174 S. E. 491 (1934); *Phipps v. Hardwick, supra*). The general rule is that the possession of one co-tenant is the possession of all. *Watson v. Little,* 224 S. C. 359, 79 S. E. (2d) 384 (1953). Hence, there can be no adverse possession against any co-tenant unless the claim is adverse to all co-tenants. *Scaife v. Thompson,* 15 S. C. 337 (1880). If some disability prevents adverse possession against one co-tenant, then it will also prevent acquisition of title as against the other co-tenants. *See Thomson v. Gaillard,* 37 S.C.L. (3 Rich.) 418 (1832) (minority of one co-tenant); *Scaife v. Thompson, supra* (fiduciary relationship between adverse possessor and one co-tenant). As a result, adverse possession will not run against any of a remainderman's co-tenants until the expiration of the preceding life estate.

Additionally, an adverse claimant must occupy the ■■ land by exclusive possession, which means that ad-

verse possession must be such as to indicate his or her exclusive ownership of the property, and not only must his possession be without subserviance to or recognition of the title of the true owner but it must be hostile thereto *as to the whole world. Mullis v. Winchester,* 237 S. C. 487, 118 S. E. (2d) 61 (1961). Thus, as long as there is an outstanding remainder interest, possession will not be adverse to any co-tenant since it is not exclusive possession.

In the case before us, the last life tenant, Sue Des-Champs McLeod, died in 1980. Therefore, it was not until her death that adverse possession could commence against her remaindermen or against any of their co-tenants.

For the foregoing reasons, we hold that the children of Lidie DesChamps, appellants Mary H. C. Owings and Warren Calhoun, Jr., have not acquired title by either adverse possession, presumption of grant, or occupancy for 40 years of the 135 acres they have occupied since the death of Lidie DesChamps in 1932. And we so hold.

Appellant Zelene G. DesChamps, one of the two daughters of Carroll DesChamps, alleges that, upon the death of her father in 1970, she went into possession of the 200 acres of trust property allotted in the 1921 partition to Carroll DesChamps and has obtained title by adverse possession. For the reasons stated above, we also reject this contention.

## II.

Appellants assert that the respondents are estopped to deny the validity of the 1921 partition. They urge that the nonaction of their co-tenants during the period they occupied the land set off to their parents constitutes an estoppel. We disagree. The elements of estoppel as related to the party claiming estoppel are: (1) lack of knowledge or means of knowledge of the truth as to the facts in question; (2) reliance upon conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially. *Frady v. Smith,* 247 S. C. 353, 147 S. E. (2d) 412 (1966). The appellants in this case cannot claim lack of knowledge or means of knowledge as to the truth of the state of the trust property title. *First Carolinas Joint*

*Stock Land Bank v. DesChamps, supra,* put them on notice that their parents only had a life estate in the land and W. W. DesChamps and W. W. DesChamps' children owned the remainder interest in the land. *Cf.* 31 C. J. S. *Estoppel* Section 5 (1980); *Watson v. Goldsmith,* 205 S. C. 215, 31 S. E. (2d) 317 (1944).

We therefore reject appellants' contention that the respondents are estopped to assert that the rights vested in them prevail over the 1921 trust deed.

Akin to estoppel is the doctrine of laches; this defense is strongly urged by appellants. For an excellent discussion of the law of laches, see the recent case of *Timms v. Timms,* 348 S. E. (2d) 386 (S.C.Ct. App., 1986). Suffice it to say that laches denotes negligent failure to act for an unreasonable period of time.

Here respondents Blanche M. Curtis, Sue M. Perkinson, and Lillian M. Youngblood instituted this action soon after the death of their mother Sue DesChamps McLeod in 1980 when their right of possession vested. Moreover, and importantly, in South Carolina laches does not begin to run against estate remaindermen until the death of the life tenants. *Gibson v. Belcher,* 287 S. C. 315, 338 S. E. (2d) 330 (1985).

For the above reasons, we hold that the doctrine of laches is not available to appellants.

### III.

When Lidie DesChamps died in 1932, her children, appellants Mary H. C. Owings and Warren Calhoun, Jr., admittedly went into possession of the 135 acres set aside in the 1921 partition to Lidie DesChamps. They argue that all other remaindermen acquiesced in their use of this 135 acres and that their title has been perfected by acquiescence. This, of course, is akin to estoppel. The case of *Bolt v. Sullivan,* 173 S. C. 24, 174 S. E. 491 (1934), would appear on first blush to support the "acquiescence" argument. In *Bolt* the four life tenants divided a tract of land into four portions. After their parents' death, their children, as remaindermen, recognized the earlier division and each child took possession of his parents' share. Our Supreme Court held that when the children of the life tenants went into the possession of that part

set aside to their respective parents, they ratified the partition. The Court held that this was true even though the remaindermen were not present at the original partition. But in *Bolt* each remainderman got something as the result of the partition, and each remainderman ratified the partition by taking possession of that land set aside by the partition to his or her parent; there was a mutuality of action and circumstances among all the remaindermen in *Bolt.* This is not the situation before us; there is no mutuality of possession by all of the remaindermen.

In South Carolina a voluntary partition among life tenants is not binding on nonconsenting remaindermen. *Sparks v. Union Mfg. and Power Co.,* 121 S. C. 220, 114 S. E. 322 (1922). A voluntary partition that is not binding on all co-tenants is not binding on any of them. *See* 68 C. J. S. *Partition* Section 17(b) (1975). Furthermore, in those courts which hold that a voluntary partition among life tenants is binding on the remaindermen, this rule only applies where the court finds the partition to be fair and equal. *See* 68 C. J. S. *Partition* Section 17(a) (2) (1975). In the case before us, the trial court found that the 1921 partition was not fair and equal; a finding in which we concur for obvious reasons. We therefore reject the contention that the doctrine of acquiescence is applicable to the case before us.

For the foregoing reasons, the appealed order is affirmed.

Affirmed.

SANDERS, C. J., and BELL, J., concur.