14189

CANNON v. HAVERTY FURNITURE CO.

(183 S. E., 469)

*Messrs. Murphy & Cain,* for appellant,

*Messrs. William A. Gunter* and *C. T. Graydon,* for respondent.

December 10, 1935.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

This action, instituted in the Court of Common Pleas for Richland County February 21, 1934, is a suit by F. A. Cannon, plaintiff, against the defendant, Haverty Furniture Company, for recovery of damages against the defendant in the sum of $10,000.00, alleged to have been sustained by the plaintiff on account of his alleged false imprisonment in the Richland County jail as the result of the wrongful acts charged against the defendant. In answer to the allegations contained in the plaintiff's complaint, the defendant alleged, in effect, that the plaintiff's imprisonment was "in pursuance of the terms of an order by the presiding Judge of the Richland County Court in the case of Haverty Furniture Company, present defendant, versus F. A. Cannon, the present plaintiff, which case terminated with a judgment against the said Cannon providing for his apprehension and arrest in the event he failed to comply with the terms thereof, and that such judgment constituted a complete and adequate defense to the within action until it be invalidated by the Court issuing it."

Issues being joined, the case was tried at the fall, 1934, term of said Court before his Honor, Judge M. M. Mann, and a jury, resulting in a verdict for the plaintiff in the sum of $500.00 actual damages and $1,000.00 punitive damages. From the judgment entered on the verdict for the said sum, the defendant, pursuant to due notice, has appealed to this Court.

For the purpose of better understanding the contention of the parties, we shall state, in substance, the allegations set forth in the pleading, bearing on the issues raised.

According to the allegations of the plaintiff, as set forth in his complaint, at the time of the commencement of this action he was a resident of the City of Columbia, County of Richland, but at some time prior thereto was a resident of,

4

and resided in, the County of Lexington, this State; that the defendant is now, and was at the times hereinafter mentioned, a corporation under the laws of this State, having its principal place of business in the City of Columbia, and that the plaintiff was formerly employed by the defendant as collector and repossession agent, and while so employed by the defendant, he collected and turned over to the defendant large sums of money and numerous articles which he repossessed for their account; that it was customary for the plaintiff to come into the office of the defendant at the end of each week or on the following Monday to check up and balance the accounts between the parties as nearly as was practical to be done, but contends that it was almost impossible to have a final accounting on any given day under the contract of employment because, under such contract, the plaintiff was entitled to commissions on money sent in direct from the customer to the defendant, if as a result of his calls upon such customer he was entitled to such commission under the contract, and the plaintiff had no way to determine such account except as to the records of the defendant.

It is the further contention of the plaintiff that under the above-mentioned employment agreement the plaintiff worked during the week beginning May 1, 1933, and collected various sums of money and repossessed for the defendant certain articles of furniture, as he had customarily done during the preceding weeks and months; "that on Friday, May 5, 1933, while so engaged and employed and while about the defendant's said business the plaintiff was driving or having driven an automobile in the City of Sumter S. C., and that the said automobile got out of control and ran into and against a house and did considerable damage thereto and as a result thereof this plaintiff was informed and believed that suit would be instituted against the defendant herein in the sum of $500.00 unless the damages were repaired promptly and not later than Monday, May 8th, at 12 o'clock and settlement therefor effected." Whereupon

out of the moneys collected for the defendant by the plaintiff in connection with said business the plaintiff paid to the owner of the said damaged premises the sum of $20.00 cash and the further sum of $12.00 for material and labor in repair and in settlement of the ·said damages. Thereafter the plaintiff, as usual came in Columbia Saturday, May 6, 1933, and reported to the defendant at its said office in the City of Columbia what had occurred and was informed that he could not be checked up before the following Monday. In this connection the plaintiff informed the defendant of the damages to the said house, and further informed defendant's agents in charge of said office that, because of the attention he would have to give the said settlement to be made in the City of Sumter, he would not be able to check up on Monday, and he then and there notified the defendant that he would be back in the City of Columbia on Wednesday, May 10, 1933; that on Tuesday, May 9, 1933, the plaintiff was approached by a Mr. Price, agent for the defendant, in Sumter, S. C., who made demand on the plaintiff to surrender all moneys, accounts, receipts, and duplicate receipt books, and any and everything in plaintiff's possession which belonged to the Haverty Furniture Company; that plaintiff informed Mr. Price that he did not have all accounts with him; "that some were at his home, that he turned over to Price all accounts he had with him and informed him that he would not turn over receipts books and money to him in Sumter but that he would go to Columbia and check up with Major K. S. Snow, with whom all of his previous accountings had been had and whom plaintiff believed was the proper person to account to. That he came on in and checked over the accounts with Major Snow on May 9th, 1933, and Major Snow caused a statement to be made up showing the status of the account between the parties insofar as it could be reasonably done showing debits and credits and balance believed to be due at that time by the plaintiff on the account but not taking into account the amount expended for the repair of the

house in Sumter to which plaintiff claimed credit and certain expense money plaintiff claimed to be due him in connection with a business trip to Beaufort, S. C., which plaintiff claimed to be Seventeen Dollars. Major Snow informed plaintiff that he would take the matter of these credits up with Mr. R. B. Rustin and determine if they were willing to allow the said credits. Whereupon the plaintiff next morning signed a statement showing the book account to hold him due the defendant the sum of Eighty-One Dollars and some odd cents."

In this connection the plaintiff further alleged, in effect, that on May 31, 1933, the defendant notified the plaintiff that he (the plaintiff) was entitled to certain other credits which he had not been given, and another statement of balance due as shown by the records, amounting to $72.44, was submitted to him, and which he (the plaintiff) signed, assuming the amount fixed therein to be correct as far as the record accounts were concerned, and the plaintiff again inquired in reference to the other credits which he claimed due, and he was again informed that the said Mr. Rustin would have to pass upon them. Some time thereafter the defendant's said Mr. Snow called at the plaintiff's boarding house and advised him to go to see Mr. Prince, the new credit manager of the defendant, stating that additional credits had been found to which he (the plaintiff) was entitled, and which reduced the balance as shown by the record to about $42.00. The plaintiff at that time requested the defendant's said agent to prepare a new paper showing the proper balance and stating that he would sign the same. The plaintiff also at that time, asked about the other credits to which he considered himself entitled, and was again informed by the said Mr. Snow that the same had not been passed upon. This statement requested was never presented to the plaintiff, showing the new balance, and the plaintiff heard nothing further from the matter until a letter was received from Mr. Murphy, an attorney for the defendant, demanding payment of the sum of $72.44. Upon receiving the letter from

Mr. Murphy, the plaintiff went to see Mr. Murphy and fully informed him of the things and matters above referred to, and stated to Mr. Murphy that he did not owe the defendant anything, but in order to avoid litigation and getting settlement, if he could he would sell a certain filling station which he had for the purpose of settling the alleged account.

The plaintiff further alleges, in effect, that not later than September 25, 1933, he moved to Lexington County and resided in the said County of Lexington until the 28th day of January, 1934, on which date he moved back to the City of Columbia; that during the plaintiff's absence from the City of Columbia, and while he was a resident of the said County of Lexington, according to plaintiff's allegations, the defendant, without just cause or excuse, and with no notice whatsoever to the plaintiff and without due process of law, with no opportunity to be heard or defend himself, falsely, fraudulently, willfully, and maliciously obtained from a Court which had no jurisdiction an order of arrest, and thereupon, on January 31, 1934, caused the plaintiff to be falsely arrested and imprisoned "as a common thief" in the Richland County jail, and there kept him imprisoned under the said order of arrest and direction of the defendant's agents and servants until February 7, 1934, on which date the plaintiff was released by order of the defendant.

In connection with the damages the plaintiff contends he sustained by reason of the said unlawful arrest, he makes this allegation: "That as a direct and proximate result of the aforesaid high-handed willful, unwarranted and malicious false imprisonment by the said defendant, has suffered and sustained great physical pain and injuries, inconvenience, discomfort, loss of time, expenses, mental sufferings, humiliation, disgrace, embarrassment, and publicly branded as a person guilty of larceny. Suffered the shame and humiliation and embarrassment of being arrested and taken away to jail in the presence of numerous persons on one of the thickly-populated streets of the City of Columbia, S.

C., and by reason thereof has suffered and sustained damages in the sum of Ten Thousand Dollars."

To the plaintiff's complaint the defendant filed the following demurrer:

"The defendant, Haverty Furniture Company, hereby demurs to the complaining upon the grounds that the complaint does not, on its face, state facts sufficient to constitute a cause of action against this defendant, in that

"There is no allegation therein that the Court order arrest therein complained of has ever been vacated, quashed, set aside or rescinded and that the continuance in full force and virtue of such order constitutes a complete and adequate bar to the present action, and that the same is premature and cannot be maintained."

The above demurrer being overruled by order of his Honor, Judge M. M. Mann, the defendant filed an answer, to the following effect:

Defendant, Haverty Furniture Company, admits that it is a corporation under the laws of South Carolina with an office in the City of Columbia, S. C., and further admits that the plaintiff, F. A. Cannon, was at one time under the employment of the defendant, Haverty Furniture Company, acting in the capacity of a collector, and repossessed property for the Haverty Furniture Company and turned such property over to the Harverty Furniture Company from time to time. The Haverty Furniture Company further admits that the said F. A. Cannon from time to time made demands upon the Haverty Furniture Company for an accounting between the said parties. The Haverty Furniture Company, in its answer, admits that its counsel wrote the said F. A. Cannon in connection with the said account and later that the said F. A. Cannon was caused to be arrested and put in jail in connection with the said transaction, but alleges that such arrest was done "under the enabling statutes of the State of South Carolina." The remaining allegations in the plaintiff's complaint were, in effect, denied by Haverty Furniture Company.

For a second defense, and by way of plea and bar, the defendant, Haverty Furniture Company, interposed the following defense: "The defendant alleges that heretofore an action was instituted against the plaintiff herein by this defendant in the County Court for Richland County, and upon information and belief that the plaintiff therein was duly and legally served with the summons and complaint; that thereafter in proper course, the cause came on to be heard, and after consideration by the presiding Judge, it was the verdict of the Court that Haverty Furniture Company have judgment against the said F. A. Cannon, the defendant in the suit now referred to in the amount sued for, and that upon default in the payment thereof that the said F. A. Cannon be arrested under the Statutory law of the State of South Carolina, as is made and provided in matters of breached trusts; that upon such verdict of the Court and judgment entered therein the defendant was apprehended and confined in the Richland County jail; that there has been no vacation, rescission, or setting aside of this judgment, and the same remains of full force, virtue and effect, and as such is a complete and adequate defense to the within action and constitutes a bar to the further prosecution of the same."

It is the contention of appellant that the exceptions raise the following questions:

"1. Will an action for false imprisonment lie where plaintiff has been confined or detained under lawful process?

"2. Will an action for false imprisonment lie, upon a denial of service of process, where the confinement complained of is made by virtue of a judgment of a Court of competent jurisdiction which has not been vacated?

"3. Did the trial Court err in refusing defendant's motion to disallow punitive damages?

"4. Did the trial Court err in refusing to instruct the jury to disregard admittedly unauthorized expenditures purportedly made by plaintiff?

"5. Did the trial Court charge the jury upon legal principles not applicable to the case, thereby prejudicing the rights of the defendant?

"6. Did the trial Court err in refusing defendant's motion for a new trial?"

It will be observed that the principal questions involved in the appeal are centered upon the order issued by the County Judge in the first suit, and upon which order F. A. Cannon, plaintiff in the case at bar, was arrested and placed in jail. It is the contention, in effect, of the appellant, that the said order, with the judgment thereon, was and is vaild; further, that the same cannot be attacked collaterally, as the respondent has attempted to do. and that therefore the judgment obtained in the second suit by F. A. Cannon against Haverty Furniture Company is improper. Whereas F. A. Cannon, plaintiff in the last-named suit, against defendant, Haverty Furniture Company, contends that the judgment in the last-mentioned suit should stand; that the arrest and consequent imprisonment of Cannon was illegal; that the County Court issuing the order in question had no jurisdiction, for the reason that there was no proof of service as required under the law in such cases. In this connection we call attention to the fact that Cannon was arrested and put in prison for debt, and we have no hesitancy in stating that, in order to give this right, the law should be strictly followed by the party causing such arrest and imprisonment; otherwise the party causing such arrest and imprisonment is liable to respond in damages. Was Cannon properly served with the summons and complaint in the suit of *Haverty Furniture Company v. Cannon?* Under the law of this state (see section 434, subd. 4, Vol. 1, Code of 1932), in order to give the County Court of Richland County jurisdiction of the defendant, Cannon, in the suit instituted against him by Haverty Furniture Company, it was necessary for Cannon to be served personally with the summons and complaint or that the same should have been given to some person "of discretion residing at the residence or

employed at the place of business of said defendant." It is the contention of Cannon that this was not done, and further that the judgment obtained on the said service was not only voidable but void, because of the wording of the proof of service. The proof of service introduced in the case reads as follows:

"State of South Carolina, County of Richland.

"H. E. Watts, being duly sworn, says that he served the summons and complaint in this action on the defendant by delivering to Mrs. P. W. Fallow, corner of Bull and Taylor Sts., and leaving with her a copy of the same at Columbia, S. C., County, on the 21 day of Oct. A. D. 1933, and that deponent is not a party to this action.

"H. E. Watts,

"Sworn to before me this 21 day of October, A. D. 1933.

"Harry M. Lightsey, L. S.

"Magistrate."

It thus appears from the above-quoted affidavit that Mr. Watts attempted to make service of the summons and complaint on the defendant "by delivering to Mrs. P. W. Fallaw, corner of Bull and Taylor Streets, and leaving with her a copy of the same, at Columbia, S. C.," on a certain date. There is nothing in the affidavit to the effect that Mrs. Fallaw is or was a person of discretion, and nothing to the effect that she resided at the residence of the defendant, or was employed at the place of business of the defendant. Further, the affidavit does not show that Mrs. Fallaw was at the residence or place of business of the defendant when the said copy of the summons and complaint was given her. The proof of service, in our opinion, is not only defective, but void on its face, and the attempted service on the defendant did not give the Court jurisdiction of the defendant, and the said order, with the judgment thereon, is void. On the trial of this case there was offered in evidence by the defendant, Haverty Furniture Company, an affidavit dated March 5, 1934, signed by Mrs.

Perry T. Fallaw (admitted to be the same person as the said Mrs. P. W. Fallaw), to the effect that on about the 21st day of October, 1933, Mr. H. E. Watts delivered to and left with her a copy of the summons and complaint in the action of *Haverty Furniture Company v. F. A. Cannon,* and at said time advised her that the said summons and complaint was to be given to the defendant, F. A. Cannon, who, according to said affidavit, at said time lived and resided at the residence of the said Mrs. Fallaw; that shortly thereafter the deponent (Mrs. Fallaw) delivered the said summons and complaint to the said F. A. Cannon, personally. In this connection we call attention to the fact that the said affidavit was taken after the commencement of the action at bar, and after said arrest and imprisonment. We may also mention, in this connection, that in the course of her testimony in the case at bar Mrs. Fallaw, in effect, denied all material matters set forth in said affidavit and stated, in effect, that she had simply signed the affidavit, but she had not delivered any such paper to Mr. Cannon; that she did not get any paper that was supposed to go to Mr. Cannon and did not transmit any such paper to Mr. Cannon; that Mr. Cannon left her house either on the 24th or 25th of September, 1933, and he did not come back to live with her. Mr. Cannon, in the course of his testimony, denied that he resided or stayed at the home of Mrs. Fallaw at the time in question, and denied that the summons and complaint was given him. But, under our view of the case, there is no need of discussing the testimony in this respect. The affidavit of service fails to show that service of Mr. Cannon was acquired. Certainly personal service was not acquired. In fact, personal service is not claimed and only substituted service is claimed, but appellant contends further, in effect, that the most that Cannon can contend for is that the judgment against him in the first suit is voidable, and, being voidable, cannot be attacked in a collateral way; that the proper way, according to appellant's contention, for Cannon to pursue is to institute a suit for the purpose of having the

judgment and order in the first suit vacated. Appellant further contends that, until the said judgment and order in the first suit is set aside, Cannon cannot maintain the suit at bar. Under our view, the judgment against Cannon in the first suit being void, the Court having not acquired jurisdiction of Cannon, he can maintain his action for the illegal arrest and imprisonment without first instituting a suit to set the judgment aside in the first suit. The demurrer was properly overruled and the motion for nonsuit properly refused.

In connection with what we have stated above, we wish to state, further, that, when the proof of service shows on its face that the service in question is defective, that service was not acquired, the orders and acts of the Court based thereon are void. In the case at bar the paper purporting to be the proof of service on Cannon in the first action does not, for the reasons we have pointed out, show complete service. Therefore the order of arrest was without authority of law and the imprisonment unlawful. As shown above, the purported proof of service on Cannon, intended to be made by substitution, does not show that the party with whom the summons and complaint was left was or is a person of discretion; it does not show that Cannon was at the time in question a resident at the place the said summons and complaint is said to have been left, and does not show that Cannon stayed at that place. In our opinion, it was not proper to supply this information, after the order and judgment in question were given and after the arrest of Cannon and his subsequent imprisonment thereunder, for the purpose of rendering the judgment against Cannon in the first action voidable instead of void. The certificate of service, that is the certificate purporting to show service, cannot be supplemented for this purpose. Further, *the certificate of service should have been complete within itself in order to give authority for the said order of arrest and subsequent imprisonment thereunder.* Counsel for appellant call special attention to the following

statement in the order signed by his Honor, M. S. Whaley, County Judge: "The affidavit of default shows that the complaint was duly served upon the defendant on the 21st day of October, 1933, as more fully appears by reference to affidavit of service on the back of the original complaint made by H. E. Watts, a constable."

Appellant calls attention to the fact that his Honor, Judge Whaley, states that the complaint was "duly" served upon the defendant. In this connection we call attention to the fact that his Honor, Judge Whaley, at the same time, shows that he bases his holding that service was duly made upon what appears in the said affidavit of H. E. Watts, and, as we have shown, the affidavit of Mr. Watts fails to show that the summons and complaint in question was duly served, that is, it fails to show that· it was served in the manner required by law; it fails to show that the Court had jurisdiction of Cannon at the time in question.

The arrest and imprisonment of a citizen for a debt is a serious matter, and it ought not to be done without a strict compliance with the law. It is not sufficient that the purported proof of service does not show on its face that the service was in an improper way, *but the proof of service should show affirmatively that the requirements of the law in making the service were complied with. Otherwise the order of arrest for imprisonment should not be issued.*

Substituted service, so far as this state is concerned, is necessarily governed by the statutes of this state, and we have quoted above the section of the Code governing such service. We have been unable to find any case in this state "on all fours" with the case at bar, and counsel have not called our attention to such case, but have called our attention to cases bearing on the subject, and among the cases is the case of *Rice v. Bamberg,* 59 S. C., 498, 38 S. E., 209.

In the case of *Rice v. Bamberg* the question of a minor was involved, whereas in the case at bar the question involves the right of a creditor to have a debtor arrested and placed in imprisonment, but there is one feature of the case of

*Rice v. Bamberg* similar to the case at bar, in that there was a failure to show a proper service on the infant as required by statute, and in the case at bar the proof of service fails to show that service was made on Cannon in the manner required by statute. In the case of *Rice v. Bamberg, supra,* the Court held, in effect, that the infant was not in Court, proper service not being shown, and, in effect held that the proceeding involved was therefore a nullity. The proof of service in the case at bar failing to show affirmatively that the alleged service was made as required by the statutes of this state, the Court cannot hold the alleged judgment against Cannon to be valid, as a matter of law, and it was not incumbent upon Cannon to institute a suit to have said judgment vacated before instituting a suit at bar against the Haverty Furniture Company for damages sustained as set out in said complaint. We may state, in this connection, that, so far as we have been able to ascertain, the case of *Rice v. Bamberg, supra,* is the latest case in this state on the question under consideration; that is, as to the manner of service in such cases. We may, further, state that the decisions of the Court in the State of West Virginia seem to be in harmony with the views herein expressed. See the following cases: *Lewis v. Botkin,* 4 W. Va., 533; *Capehart v. Cunningham,* 12 W. Va., 750; *Midkiff v. Lusher,* 27 W. Va., 439; *Johnson v. Ludwick,* 58 W. Va., 464, 52 S. E., 489.

In support of appellant's position, appellant cites a number of authorities, and included therein are the following: *Hogg v. Pinckney,* 16 S. C., 387; *China v. Seaboard Air Line Railroad,* 107 S. C., 179, 92 S. E., 335; *McHugh v. Pundt,* 1 Bailey, 441; *McConnell v. Kennedy,* 29 S. C., 180, 7 S. E., 76; *Bushart v. United Investment Co.,* 121 S. C., 324, 113 S. E., 637, 35 A. L. R., 637; *Gladden v. Chapman,* 106 S. C., 486, 91 S. E., 796; *Darby v. Shannon,* 19 S. C., 526; *Hunter v. Ruff,* 47 S. C., 525, 25 S. E., 65, 58 Am. St. Rep., 907; *Turner v. Malone,* 24 S. C., 398; *School District v. Fowles,* 87 S. C., 552, 70 S. E., 315;

*Hendrix v. Holden,* 58 S. C., 495, 36 S. E., 1010; *Mc-Cullough v. Hicks,* 63 S. C., 542, 41 S. E., 761; *New York Life Insurance Company v. Mobley,* 90 S. C., 552, 73 S. E., 1032; *Tolbert v. Roark,* 126 S. C., 207, 119 S. E., 571; *Coogler v. Crosby,* 89 S. C., 508, 72 S. E., 149; *Whaley v. Lawton,* 62 S. C., 91, 40 S. E., 128, 56 L. R. A., 649; *Crocker v. Allen,* 34 S. C., 452, 13 S. E., 650, 27 Am. St. Rep., 831; *Wilkins v. Hall,* 2 McCord, 205; *Feld v. Loftis,* 240 Ill., 105, 88 N. E., 281; *Johnson v. Scott,* 134 Ky., 736, 121 S. W., 695; *Baker v. Brewer,* 129 S. C., 74, 123 S. E., 771; *Prince v. Dickson,* 39 S. C., 477, 18 S. E., 33, 34; *Jennings v. Clearwater Mfg. Co.,* 171 S. C., 498, 172 S. E., 870; *Blount v. Walker,* 28 S. C., 545, 6 S. E., 558; *Lewis v. Botkin,* 4 W. Va., 533; *Haller v. Digman,* 113 W. Va., 240, 167 S. E., 593; *Sandel v. Whisenhunt,* 168 S. C., 129, 167 S. E., 166; *Crouch v. Tarver,* 173 S. C., 172, 175 S. E., 273; *White v. Railway Company,* 142 S. C., 284, 140 S. E., 560, 57 A. L. R., 634; *Nilson v. Dowling,* 161 S. C., 515, 159 S. E., 831.

The above-named cases which we have been able to investigate are not, in our opinion, in conflict with the views we have expressed herein. The case of *Hogg v. Pinckney, supra,* and the case of *China v. Seaboard Air Line Railroad Company, supra,* cited by appellant, supports appellant's position that the action cannot be construed as an action for malicious prosecution. The allegations of the complaint and the testimony given in response thereto show clearly that the action is for damages alleged to have been sustained by the plaintiff, Cannon, due to his alleged false arrest and imprisonment as a result of the wrongful acts of the defendant, Haverty Furniture Company; but it does not follow that the action by Cannon against Haverty Furniture Company should be dismissed. As stated, appellant calls attention to the case of *McHugh v. Pundt, supra.* An examination of that case fails to convince us that it is authority for dismissing the suit instituted by Cannon. As we understand the position of appellant, it is the contention of appellant

that the process against Cannon was legal, and that therefore Cannon's suit against the Haverty Company must fail. In this connection we quote the following from the syllabus in said case of *McHugh v. Pundt*: "Trespass will not lie for having had the plaintiff arrested under legal process, if the proceedings were regular upon their face: If they are voidable for matter dehors the record, the plaintiff's remedy is by special action on the case. *Vide McCool v. McCluny*, Harp., 486, and *Kelly v. Rembert*, Harp., 65, 18 Am. Dec., 643."

Under our view, this principle of law is not in conflict with the views we have expressed herein. Of course, if Cannon was arrested under legal process and the proceedings were regular upon their face, the judgment in question in the first suit could not be attacked collaterally, even though Cannon alleged in his complaint that he was not served in the action in question, but he would have to institute a suit for the purpose of having that judgment set aside before he would be in position to institute a suit for damages for illegal arrest and imprisonment. But, under our view of the case, Cannon was not arrested and imprisoned under legal process, and the proceedings were not regular upon their face, for the reasons we have set out above. Therefore it was not incumbent upon Cannon to institute a suit to have the judgment in the first case set aside before instituting a suit for the alleged damages for the illegal arrest and imprisonment. The simple signing of an order of judgment by a legally constituted Judge should ordinarily be construed as making such order of judgment legal and binding, in the absence of anything on the face of the record to show that such Judge did not have the authority to sign the same. But, when it clearly appears on the face of the record, as in the case of *Haverty Furniture Company v. Cannon*, that the party against whom the judgment was given was not legally brought into Court, such order of judgment becomes a nullity on its face. It was therefore unnecessary for Cannon in the suit at bar to offer evidence to prove that he was

not served in the first case, the suit of *Haverty Furniture Company v. Cannon.* However, the Haverty Furniture Company is not in a position to complain, because Cannon testified that he was not served in that case, and other evidence was offered to the same effect.

Appellant also cites the case of *McConnell v. Kennedy,* 29 S. C., 180, 7 S. E., 76, 78, and in doing so states, in effect that this case disposes of the question at hand, quoting from the case the following: "If the action is to be regarded, as we think it must be, as an action for false imprisonment, and the plaintiff, by his testimony, has shown that the arrest and imprisonment of which he complains *was made under legal process, regular in form,* and lawfully issued and executed, then he has proved himself out of Court by showing that there was no *false* imprisonment, and hence that he had no such cause of action as that upon which his complaint was based. It seems to us that the gist of the action for false imprisonment is that one has been restrained of his liberty without lawful authority; and, where it appears that the restraint or imprisonment complained of is under lawful process, the action must necessarily fail." (Italics ours.)

The trouble with appellant's position is that the arrest and imprisonment of which Cannon complains was not made under legal process, regular in form, for the reasons we have shown above, to which discussion reference is made at this time.

In connection with appellant's position appellant also quotes the following from the case of *Bushardt v. United Investment Company,* 121 S. C., 324, 113 S. E., 637, 639, 35 A. L. R., 637: "It has been definitely decided in this jurisdiction that where one is 'properly arrested by lawful authority,' 'an action for false imprisonment cannot be maintained against the party causing the arrest.' * * * For good reasons grounded in sound public policy, we apprehend that the law refers an innocent person so wronged to the action of malicious prosecution for the only redress

to which he is entitled. Upon the issue here involved in an action for false imprisonment, the sole inquiry is, Was the plaintiff unlawfully restrained of his liberty?"

The arrest of Cannon could not be regarded as lawful because the service was not made as required by law, as we have shown above.

Appellant also quotes from the case of *Gladden v. Chapman,* 106 S. C., 486, 91 S. E., 796, 797. In our opinion, the principle stated in this case is not at variance·with the views we have stated herein.

The following is the part of the opinion from that case to which our attention is called.

" 'Jurisdiction does not relate to the right of the parties, as between each other, but to the power of the Court. The question of its existence is an abstract inquiry, not involving the existence of an equity to be enforced, nor the right of the plaintiff to avail himself of it if it exists. It precedes these questions, and a decision upholding the jurisdiction of the Court is entirely consistent with a denial of any equity, either in the plaintiff or in any one else. The case we are considering illustrates the distinction I am endeavoring to point out, as well as any supposed case would. It presents these questions: Have the plaintiffs shown a right to the relief which they seek? and has the Court authority to determine whether or not they have shown such a right? A wrong determination of the question first stated is error, but can be re-examined only on appeal. The other question is the question of jurisdiction.' [*People v. Sturtevant,* 9 N. Y., 263, 269, 59 Am. Dec., 536.]

"It must be presumed from the judgment rendered that the Court considered and adjudicated the regularity of sufficiency of each and every step in the proceedings leading up to it, including the sufficiency of the complaint, the issuance and service of process upon the defendants, and the rights and interests of the parties to the action under the allegations and evidence; and although the conclusions with respect to those matters, or any of them, might have been

erroneuos, so that they would have been reversed on appeal, they do not make the judgment void collaterally."

This Court does not disagree with the principles of law stated in the above-named case, *Gladden v. Chapman,* and concedes that, in the first instance the Court, in the case of *Haverty Furniture Company v. Cannon,* must be presumed to have examined into the record to ascertain whether it was proper for his said order to be issued, but, when the record shows on its face that it was not regular, the presumption that the process was regular disappears, and the only announcement that the Court can properly make is that process was not regular and the arrest and imprisonment thereunder unlawful.

As above shown, the appellant also cites and quotes from the following cases: *Darby v. Shannon; Hunter v. Ruff; Hendrix v. Holden; New York Life Insurance Company v. Mobley; Tolbert v. Roark; Coogler v. Crosby; Whaley v. Lawton; Feld v. Loftis; Johnson v. Scott; Baker v. Brewer,* and *Prince v. Dickson, supra;* but in this connection we deem it sufficient to call attention to the following language, which the appellant quotes from the last-mentioned case, *Prince v. Dickson*: "In other words, where the record of a judgment shows upon its face that the Court rendering the judgment has acquired jurisdiction of the party against whom it is rendered, neither that party nor any other person can assail such judgment for want of jurisdiction, except by some direct proceeding instituted for the purpose of correcting any alleged error in what appears upon the record, and such record must be treated as importing absolute verity until it has been so corrected."

We do not question the correctness of this rule, but, when the record, as in the case at bar, clearly shows on its face that service had not been acquired, or fails to show that service had been acquired in the manner prescribed by law, then the process must be regarded as void and not simply voidable. Therefore it was not incumbent upon Cannon to institute a suit to have the judgment in

the case against him set aside before instituting the suit against Haverty Furniture Company for damages for the wrongful arrest and imprisonment, but his position was properly set up in the suit at bar. Ordering a citizen to be arrested and put in jail on a matter of debt is not a matter to be lightly regarded. Under our view, before an order should be issued for the arrest and imprisonment of a citizen regarding a debt the record should clearly show that the law of service has been complied with.

In concluding the discussion on this phase of the appeal, we call attention to the following language appearing in the opinion in the case of *Rice v. Bamberg, supra,* appearing in 59 S. C., 498, on page 505, 38 S. E., 209, 211, which opinion was written by Mr. Justice Gary, later Chief Justice, as the organ of the Court: " 'If there is no proof of what was done in obtaining service, in the record, we will presume that service was in fact made; but, when the record shows what was done for the purpose of obtaining service, how can we presume that something different was in fact done? * * * We consider the true rule to be that legal presumptions do not come to the aid of the record, except as to acts or facts touching which the record is silent.' In Black, Judgm., § 277, it is said: 'If the record is silent as to jurisdictional facts, it will be aided by presumptions. But if it recites such facts, and the facts recited are not sufficient to confer jurisdiction, there can be no presumption that the recital is incorrect or incomplete.' "

We also call attention to the following language appearing in the opinion written by Mr. Justice Jones, later Chief Justice, in the case of *Clark v. Neves,* 76 S. C., 484, 57 S. E., 614, 616, 12 L. R. A. (N. S.), 298: "When it appears affirmatively on the face of the record that an infant has not been served with summons, the infant is not bound by the proceedings. *Bailey v. Bailey,* 41 S. C., 337, 19 S. E., 669, 728, 44 Am. St. Rep., 713. If the record is silent as to such jurisdictional matters with respect to a Court of general jurisdiction, it will be presumed that what ought to

have been done was done; *but, when the record discloses the manner in which service on an infant was attempted to be made, there is no presumption that they were served in any other way. Rice v. Bamberg, 59 S. C. [498], 505, 38 S. E., 209.*" (Italics added.)

We also call attention to the following rule expressed in 34 C. J., 550, 551: "Where the facts upon which a Court assumes jurisdiction are recited in the record, and appear by it to have been such as would not in law confer jurisdiction, the judgment may be impeached collaterally; for in this case there can be no presumption, in aid of the judgment, that the recitals of the record are incorrect or incomplete, or that something was done which the record does not show to have been done, the whole record being taken together for this purpose. Thus, where the judgment recites that defendant was duly served with process, but the record shows that no service was made, or shows a service which was insufficient, and unauthorized by law, it may be collaterally impeached."

As to the alleged error imputed to the trial Judge in refusing the defendant's motion to disallow punitive damages, we deem it sufficient to state that a careful reading of the testimony convinces us that it was proper for the trial Judge to submit that issue to the jury.

Appellant also takes the position that the trial Judge erred in refusing to instruct the jury to disregard "admittedly unauthorized expenditures purportedly made by the plaintiff." We are unable to agree with appellant in this contention. In answer to a question by the Court at the conclusion of his Honor's charge as to whether or not any further charge was desired, the following occurred:

"Mr. Cain: Your Honor, I would like you to charge the jury that they are not to consider the Sumter automobile accident, alleged by the plaintiff as there is no testimony to fix liability whatsoever upon the Haverty Furniture Company for the damage arising therefrom.

"The Court: I can't do that.

"Mr. Graydon: That is a charge on the facts.

"The Court: As I stated, the whole testimony is for the jury.

"Mr. Cain: As between the Haverty Furniture Company and the plaintiff.

"The Court: I have stated to this jury that this is not an action by the Haverty Furniture Company to fix the debt against Mr. Cannon—that is only a question as to whether they had a probable cause against him or not and whether or not this action was proper in the County Court, therefore it leaves the jury to determine whether or not it was a valid claim and whether or not it was taken into consideration—whether it was valid or not—

"Mr. Graydon: That's right, your Honor.

"The Court: I cannot charge whether they could or could not do it—for if they wanted to contract to do it, they had a right to do it—that is the law."

We do not think that the appellant was prejudiced by his Honor's ruling in the respect charged; and, in this connection, we may state that, in our opinion, the appellant was not prejudiced by any other part of his Honor's charge.

As to the alleged error imputed to the trial Judge in refusing the motion for a new trial, we deem it sufficient to state that an examination of the record convinces us that the motion should be overruled. Further, the questions raised in the motion for a new trial have, in the main, been answered in the discussion of the other questions presented by appellant, and there is no need of extending the discussion.

We have not undertaken to discuss herein all questions presented in the briefs of counsel for the respective parties, but we have, in reaching our conclusion, duly considered the same, and, in our opinion, the judgment should stand.

The judgment of this Court is that the exceptions be, and are hereby, overruled, and the judgment of the lower Court affirmed.

Mr. Chief Justice Stabler concurs in result.

Mr. Justice Fishburne concurs.

Mr. Justice Bonham (dissenting):

The respondent brought action to recover damages of the appellant corporation for alleged false imprisonment.

There was a demurrer to the complaint based on the ground that it does not allege "that the Court Order of Arrest therein complained of has ever been vacated, quashed, set aside or rescinded and that the continuance in full force and virtue of such order constitutes a complete and adequate bar to the present action." The demurrer was overruled. The defendant answered, setting up, among other defenses, the same question made by the demurrer, and the case went to trial. In orderly sequence there were motions by defendant for nonsuit, directed verdict, and new trial, all of which were denied; the verdict was for plaintiff. The appeal from the judgment entered on the verdict stands upon several exceptions, not all of which need be specifically considered.

It appears to this Court that the fundamental error of the trial Court lies in the fact that the Court treated the action as one for false arrest. It is true that in Paragraph 13 of the complaint it is alleged that defendant "falsely, fraudulently, wilfully and maliciously obtained from a Court with absolutely no jurisdiction whatever an order of arrest and thereupon caused the plaintiff to be imprisoned in the county jail of Richland County, * * * and there kept imprisoned under said order," etc. So much by way of recital of causes. When it comes to the effects, the things for which plaintiff demands relief and claims judgment, he states in the fourteenth paragraph of his complaint: "That as a direct and proximate result of the said high-handed, wilful, unwarranted and malicious false imprisonment by the said defendant has suffered and sustained great physical pain and injuries, inconvenience, discomfort, loss of time, expenses, mental suffering, humiliation, disgrace, embarrassment, and publicly branded as a person guilty of

larceny. Suffered the shame and humiliation and embarrassment of being arrested and taken away to jail in the presence of numerous persons on one of the thickly-populated streets of the City of Columbia, S. C., and by reason thereof has suffered and sustained damages in the sum of Ten Thousand Dollars."

The plea is unequivocally placed by plaintiff on the ground of his false imprisonment and not on the ground of his false arrest. Nevertheless the presiding Judge tried the case and submitted it to the jury solely on the theory that it was an action for false arrest or malicious prosecution.

The material difference between an action for false arrest or malicious prosecution and one for false imprisonment is thus stated:

To sustain an action for damages for malicious prosecution, which is synonymous with false arrest in a civil action founded upon a charge of crime, since the arrest is the first step in the prosecution, the plaintiff must prove three things: (1) That there was no probable cause to charge him with a crime; (2) that the prosecution was prompted by excess malice toward him; (3) that the prosecution was ended before the civil action was begun. See *Stoddard v. Roland,* 31 S. C., 342, 9 S. E., 1027; *Hogg v. Pinckney,* 16 S. C., 387, 395; *China v. Ry. Co.,* 107 S. C., 179, 92 S. E., 335.

In order to maintain an action for false imprisonment, plaintiff must prove that he was arrested and imprisoned without lawful process or authority. The applicable law is thus stated in the case of *McConnell v. Kennedy,* 29 S. C., 180, 7 S. E., 76. In that case plaintiff alleged in his complaint that "defendant maliciously, and with intent to injure the plaintiff, caused and procured the arrest and imprisonment of the plaintiff 'without probable cause, and without any right or authority.' "

Note the similarity in the allegations of the complaint in that case and those in the case before us.

As to the former case this Court said: "If the action is to be regarded, as we think it must be, as an action for false imprisonment, and the plaintiff, by his testimony, has shown that the arrest and imprisonment of which he complains was made under legal process, regular in form, and lawfully issued and executed, then he has proved himself out of Court by showing that there was no *false* imprisonment, and hence that he had no such cause of action as that upon which his complaint was based. *It seems to us that the gist of the action for false imprisonment is that one has been restrained of his liberty without lawful authority; and, where it appears that the restraint or imprisonment complained of is under lawful process, the action must necessarily fail. It is quite true that one arrested and restrained of his liberty, even under lawful process, may have a cause of action, if it is alleged and shown that the prosecution was malicious, and was without probable cause, and has terminated; but that is a different cause of action, and depends upon different allegations and proofs, and the action for malicious prosecution must not be confounded with an action for false imprisonment.*" (Italics added.)

Despite this announcement of the great jurist, Chief Justice McIver, who wrote the opinion, the trial Judge in the present case pitched the hearing as one on action for malicious prosecution; he admitted testimony pertinent to such issue, and charged the jury law applicable to such issue; and did not charge the law nor submit to the jury the issue of false imprisonment. Yet there had been no prosecution of plaintiff by defendant; he was arrested after judgment in a civil action under a process known as arrest and bail authorized by statute.

There can be no longer a doubt that this was an action for false imprisonment alone.

In the case of *Barfield v. J. L. Coker & Co.,* 73 S. C., 181, 53 S. E., 170, 173, the Court said: "Where one brings an action for false imprisonment, all that is necessary for him to allege and prove is that he has been unlawfully

restrained of his liberty, and it is wholly immaterial to inquire whether the charge against him, and for which he has been arrested, is well or ill founded in fact. *McHugh v Pundt,* 1 Bailey, 441; *McConnell v. Kennedy,* 29 S. C. [180], 187, 7 S. E., 76. There is a material distinction between an action for false imprisonment and an action for malicious prosecution. The former proceeds upon the theory that the plaintiff has been arrested without authority of law and unlawfully deprived of his liberty, while the latter proceeds upon the theory that the plaintiff has been lawfully arrested upon a warrant charging a criminal offense, and that such prosecution is malicious and without probable cause."

That this was an action for malicous prosecution is made plain by the complaint which declares in express language that it is an action for false imprisonment and which in its recital shows that the plaintiff was arrested in a civil action and held in custody by authority of an order of the County Court of Richland County, which is a Court of competent jurisdiction. The order of Judge Whaley of the County Court under which the plaintiff was arrested, states explicitly that: "The affidavit of default shows that the complaint was duly served upon the defendant on the 21st day of October, 1933, as more fully appears by reference to affidavit of service on the back of the complaint made by H. E. Watts, a constable."

It appears that the order of arrest and imprisonment was regular on its face.

But if it be conceded, which is not done, that the demurrer was properly overruled, then let us analyze the situation there presented.

The plaintiff alleges in his complaint that the Court never acquired jurisdiction of the plaintiff in this action as defendant in the action of *Haverty Furniture Company v. F. A. Cannon,* becouse the summons and complaint were never served on the said defendant; that the defect of service appears upon the face of the record; that the judgment against

Cannon was a nullity and gave no authority for the order of arrest and imprisonment, and might be disregarded whereever encountered.

The proof of service appearing on the back of the summons was in these words: "H. E. Watts being duly sworn says that he served the summons and complaint in this action on the defendant by delivering to Mrs. P. W. Fallaw, corner Bull and Taylor Streets and leaving with her copy of the same at Columbia, S. C. County, on the 21 day of October 1933, and that depondent is not a party to this action.

"Sworn to, etc.

"H. E. WATTS."

It is the contention of the respondent that this proof of service does not show that the service complied with the provisions of subdivision 4 of Section 434, Vol. 1, Code of Civ. Proc., 1932, which regulates the manner of service of summons, and which is as follows: "In all other cases to the defendant personally, or to any person of discretion residing at the residence or employed at the place of business of said defendant."

The alleged defects are that the proof of service does not show that Mrs. Fallaw was a person of discretion nor that she resided at the place of residence of defendant, that therefore the Court never acquired jurisdiction of the defendant, and that the judgment against him in favor of Haverty Furniture Company was a nullity, and it was not incumbent on the respondent to set it aside before bringing the present action.

We think this contention cannot be sustained and that this action is a collateral attack on the judgment.

In the case of *Hunter v. Ruff*, 47 S. C., 525, 25 S. E., 65, 74, 58 Am. St. Rep., 907, the Circuit Judge held that the judgment against Hunter, under which his land was sold, was void, for the reason that the Court never acquired jurisdiction of the person of Hunter, who was a nonresident who had property in this State. The service of summons

was by publication and depositing a copy of the summons in the Post Office addressed to him at Leon, State of Nicaragua, Central America, whereas it appeared that Hunter was at the time of the service of the summons by deposit in the Post Office a resident of the City of Jenopete, Central America (in the Republic of Nicaragua). The Supreme Court reversing the judgment of the Circuit Court in an elaborate opinion by Chief Justice McIver, said this: "In Freem. Judgm. § 126, quoted with approval in *Darby v. Shannon*, 19 S. C. [526], at page 537, and again in *Eason v. Witcofskey*, 29 S. C. [239], at page 246, 7 S. E., 291, 295, it is said: 'There is a difference between a want of jurisdiction, and a defect in obtaining jurisdiction. * * * In case of an attempted service the presumption exists that the Court considered and determined the question whether the acts done were sufficient or insufficient. If so, the conclusions reached by the Court, being derived from hearing and deliberating upon a matter which by law it was authorized to hear and decide, *although erroneous, are not void.'* ". (Italics added.)

In our present case the respondent was arrested and imprisoned upon order issued by Judge Whaley in a Court of competent jurisdiction, in which order he said: "The affidavit of default shows that the complaint was duly served on defendant on the 21st day of October, 1933, as more fully appears by the affidavit of service on the back of the original complaint made by H. E. Watts, a constable."

Here was an order regular on its face finding that the service of process was regularly and duly served, which the respondent in this action deliberately ignores and declares to be void.

Continuing the quotation from the opinion *in re: Hunter v. Ruff,* we find this: "Now, in the case under consideration *the presumption here spoken of has become a fact, for it is recited in Judge Kershaw's order for judgment that a copy of the summons was duly mailed to the defendant, at 'his place of residence', and, even if such finding of fact should*

*afterwards turn out to be erroneous, that will not render the judgment void."* (Italics added.)

When, therefore, Judge Whaley declared in his order that "the complaint was duly served on the defendant," the presumption that it was so served became a fact, and the defendant, in that case, could not by his *ipsa dixit* declare the judgment void. Of course, we are not to be understood to hold that the defendant in the original action could not by proper proceeding in the case attack the judgment for want of jurisdiction; we only hold here that in the stated circumstances he could not ignore the judgment as void nor could he attack it collaterally.

In the case of *School District v. Fowles,* 87 S. C., 552, 70 S. E., 315, 316, it appears that the litigation began in Magistrate's Court, in which judgment by default had been rendered against school district No. 9. On *certiorari* to the Circuit Court, the judgment of the Magistrate's Court was reversed on the ground that it did not appear on the face of the proceedings that the magistrate had acquired jurisdiction of the defendant, in as much as the return does not show that Eargle, upon whom a copy of the summons and complaint was served, was a trustee of said school district. On appeal to the Supreme Court, the judgment of the Circuit Court reversing the judgment of the Magistrate's Court was reversed. The Supreme Court said: "A return of process, defective on its face, in that it does not show the relation of the person served to the defendant corporation, is cured by a recital in the judgment that the defendant had been duly and legally served"—citing *Ford v. Delta & Pine Land Co. (C. C.),* 43 F.; 181.

The case of *Dill-Ball Co. v. Bailey,* 103 S. C., 233, 87 S. E., 1010, recites a peculiar state of facts attending a service of process. The summons and complaint were lodged with the sheriff of Charleston County for service on the defendant, who lived on Edisto Island. The papers were sent by the sheriff to R. T. King to be served on defendant. He deposited them in defendant's mailbox by defendant's

servant; and by him delivered to defendant. King testified that defendant sent for him and said: "I got those papers you sent me," or "I want to talk to you about those papers." Defendant denied in his testimony that he had sent for King or had such conversation with him. Upon the report of King, the sheriff made his certificate in usual form of personal service. Defendant by affidavit denied that he had been served with the summons and complaint.

The Circuit Judge held that the service was sufficient, and the Supreme Court sustained his finding.

The case of *Gladden v. Chapman,* 106 S. C., 486, 91 S. E., 796, is applicable here. It was an action to recover possession of a tract of land sold for partition under a judgment of the Circuit Court. This Court, by Mr. Justice Hydrick, said on appeal:

"The record in that action, which defendants pleaded as an estoppel, showed that two of the plaintiffs were not parties thereto and that four of them were. The Court directed a verdict for the two who were not parties and against the four who were. The latter appealed.  *  *  *  This being a collateral attack upon it, that judgment and the sale made under it must be sustained, unless it affirmatively appears upon the face of the record that the Court had no jurisdiction of the subject of the action, or of the parties. * * *

"It must be presumed from the judgment rendered that the Court considered and adjudicated the regularity and sufficiency of each and every step in the proceedings leading up to it, including the sufficiency of the complaint, *the issuance and service of process upon the defendants,* and the rights and interests of the parties to the action under the allegations and evidence; *and although the conclusions with respect to those matters, or any of them, might have been erroneous, so that they would have been reversed on appeal, they do not make the judgment void collaterally"*—citing *Hunter v. Ruff, supra;* Van Fleet on Collateral Attack, § 1; 23 Cyc., 1078. (Italics added.)

Here is another interesting and applicable case: *Metropolitan Life Ins. Co. v. Still et al.*, 140 S. C., 18, 138 S. E., 401. This was an appeal from an order of the Circuit Court refusing a summons and complaint. The pertinent facts are thus stated in the opinion:   ,

The summons and complaint were lodged in the Sheriff's office for service. He deputized Miss Riley to make the service. She went to the home of the defendant, the residence of her husband's mother, Mrs. Marion Still, in the Town of Blackville. The defendant was temporarily absent in Florida. Miss Riley told Mrs. Marion Still that she had a paper to serve on the defendant, Mrs. Hope L. Still. Mrs. Marion Still replied that she would not be responsible for any paper left for the defendant. Miss Riley asked to be allowed to place the paper upon the hall table, which was refused. Miss Riley then stated that she would place the paper in the mailbox on the porch, which she did. It also appears that the defendant returned from Florida between May 31 and June 17 and was informed that the paper had been left in the mailbox. Her husband on June 1 looked in the mailbox and found the summons and complaint, and defendant was informed of this fact. The order appealed from was affirmed.

See, also, *McInnis v. Caulk et al.*, 176 S. C., 399, 180 S. E., 340. It there appeared that the judgment contained no proof of service. A proceeding was brought to set aside the judgment on the ground that the defendants had not been served with summons and complaint. Despite the fact that no proof of service appeared in the judgment roll and the defendants swore they had never been served, this Court held that the circumstantial evidence was enough to show that service had been made, and the motion to set aside the judgment was denied.

It would appear that the respondent was not very confident of his position that the proof of service of the summons and complaint showed fatal defects. On the trial of the case he set to work by evidence *aliunde* the record to prove that he

never was served with the summons. In support of his testimony he introduces Mrs. Fallaw, who was asked:

"Will you kindly tell us, if you remember, if any paper was served on Mr. Cannon or for Mr. Cannon during October 1933? A. I do not.

"Did you get any paper that was supposed to go to him, that you remember of? A. No, sir.

"Did you transmit any paper at all to him during that period? A. I did not."

Mendle Fallaw, aged 18, son of Mrs. Fallaw, the preceding witness, testified that he did not know anything of any paper being left to serve on Cannon. None was left with him.

That is the evidence which plaintiff offers to prove that no summons and complaint were served on him, except that he denied that he made the statements to which Mr. Murphy testified.

As against the plaintiff's testimony anent the service, the defendant introduced the affidavit of Mrs. Fallaw, made before the trial of the instant case, in which she swore as follows:

"Personally appeared before me, Mrs. Perry T. Fallaw, who being duly sworn, says that she has been residing in the City of Columbia, S. C., for the past eight years; that she now resides, and at the times hereinafter mentioned did reside at the premises situated at the corner of Bull and Taylor Streets, known as 1529 Bull Street, Columbia, S. C.; that on or about the 21st day of October, 1933, Mr. H. E. Watts delivered to her and left with her a copy of the Summons and Complaint in the foregoing entitled action, and at the same time advised her that the same was to be given to the defendant F. A. Cannon, who at said time lived and resided at the residence of deponent; that shortly thereafter deponent delivered the said Summons and Complaint, as served upon her by H. E. Watts, to said F. A. Cannon, personally."

"Mrs. Perry T. Fallaw.

"Sworn to before me this 5th day of March, 1934.

"H. E. WATTS,

"Notary Public for S. C."

H. E. Watts for defendant testified that he was a constable, had been for 14 years; knew Mrs. Fallaw well; when the summons and complaint in the case of *Haverty Furniture Company v. F. A. Cannon* was given him for service, he went to Mrs. Fallaw's, where Cannon was boarding; in consequence of what Mrs. Fallaw told him, he left the summons and complaint with her. He testified further that Cannon told him he got the papers but he did not live in Richland County. He testified further that he was going by what Mrs. Fallaw told him; would not have left the paper there if she had not told him Cannon lived there.

J. B. Murphy, attorney for plaintiff in the case of *Haverty Furniture Co. v. Cannon,* testified that he gave the papers in that case to Mr. H. E. Watts to be served on Mr. Cannon. Watts made the service and brought the papers back to him. Before the time for answering had expired Mr. Cannon came to him at his office and asked him not to take judgment against him, that he owned a filling station in Orangeburg which he was going to sell and would pay up; waited approximately ten days after time for answering had expired before taking judgment. After he was arrested, Mr. Cannon came by Mr. Murphy's office with Mr. Starling. He told Cannon in the presence of Mr. Starling that he had made these statements to the witness. "I made the statement, which he did not contradict that he had come to see me after the papers were served and I had given him a week or ten days in which to raise the money."

Mr. J. T. Starling, deputy sheriff, testified that he took Cannon, at his request, after his arrest, to Mr. Murphy's office. The witness was asked:

"Did you hear Mr. Murphy's testimony about what took place between he (him) and Mr. Cannon in your presence? A. Yes, sir.

"Q. Is that correct? A. Yes, sir."

The facts in the case of *Dill-Ball Co. v. Bailey, supra,* have been hereinabove detailed. The Circuit Judge said in his order: "It seems to me that when the defendant sent for the representative of the Sheriff and stated that he had received the papers, and had them then in his possession and then and there recognized the service, it was a substantial compliance with the requirements as to personal service, notwithstanding the papers had been conveyed to the defendant in a circuitous way."

In the case of *Metropolitan Life Ins. Co. v. Still, supra,* the facts of which are substantially hereinabove set forth, the motion to set aside the service was refused by the Circuit Judge; defendant gave notice of intention to appeal and served an answer, with a notice that the answer became effective only if the Supreme Court sustained the order of the Circuit Court. This Court said: "Passing by the question whether this reservation was sufficient to relieve the defendant from a waiver of imperfect service, we think that it was sufficient to show that the defendant was, with the other circumstances detailed, fully informed of the pendency of the action. This answers all the purposes of a summons, and comes within the rule laid down in *Dill-Ball v. Bailey,* 103 S. C., 233, 87 S. E., 1010."

There can be no doubt that F. A. Cannon had notice of the pendency of the action of Haverty Furniture Company against him. He admitted so much to H. E. Watts, the constable who served the summons, and to Mr. J. B. Murphy, plaintiff's attorney in that case, in the presence of J. T. Starling, deputy sheriff.

Unquestionably the plaintiff in this action has been permitted to make a collateral attack upon the process under which he was arrested and imprisoned, which process of the Court was regular on its face in every particular.

Collateral impeachment, which is declared to be synonymous with collateral attack, is thus defined by Black's Law Dictionary (3d Ed.), p. 348: "A collateral impeachment of

a judgment, or decree, is an attempt made to destroy or evade its effects as an estoppel, by reopening the merits of the cause by showing reasons why the judgment should not have been rendered, or should not have a conclusive effect, in a different proceeding, *i. e.,* in any action other than that in which the judgment was rendered; for, if this be done upon appeal, error, or certiorari, the impeachment is direct"—citing a long list of cases from other jurisdictions and that of *Tolbert v. Roark,* 126 S. C., 207, 119 S. E., 571, 574.

Whatever name the plaintiff and the trial Court have given to the nature of the action, it constitutes a collateral attack upon a judgment valid upon its face.

The case of *Tolbert v. Roark,* above cited, is decisive of this question: "There can be no doubt * * * that, generally speaking, all attacks upon a judgment which involve an examination of evidence *de hors* the record of the cause wherein the judgment was rendered should be regarded as collateral for the purpose of applying the rule that a judgment may not be collaterally impeached for a defect or infirmity not apparent on the face of the record, and 'that the proper remedy in attacking a judgment for any defect not apparent upon the face of the record is by a motion in the cause, and before the Court in which the judgment was recovered.' "

This view is even more forcefully stated in the case of *Coogler v. Crosby,* 89 S. C., 508, 72 S. E., 149, in this language: *"The entire absence of proof of service is not to be taken as conclusive evidence that no such service was made; on the contrary, the Court before which the judgment roll is offered in evidence must presume that the Court, on the hearing of the case in which the judgment was rendered had before it proper proof of the service of the summons, or it would not have rendered the judgment. * * * In such case the judgment is not void on its face, and the only remedy of a party claiming not to have been served is*

*by a direct proceeding to have the judgment set aside."* (Italics added.)

In *Gladden v. Chapman, supra,* Mr. Justice Hydrick said this: "Sound public policy requires that the solemn judgments of the Courts and rights acquired thereunder be sustained against collateral assault, if in reason and justice it can be done. If such judgments and rights are lightly overthrown, the Courts are brought into disrepute and merited contempt."

If the action in the present case be held to be one for false imprisonment, as it must be, it was reversible error to overrule the demurrer, because it appears from the allegations of the complaint that the plaintiff was arrested and imprisoned under process regular on its face, issued by a Court of competent jurisdiction.

It was error not to grant defendant's motion for directed verdict, for it appeared by competent and direct evidence that the order for the arrest and imprisonment of the plaintiff was regular on its face and was issued by a Court of competent jurisdiction on a judgment, regular on its face and unimpeached by any proper proceeding.

If it should be held that the present action was one for false arrest or malicious prosecution, it is patent that it is a collateral attack upon a judgment. It was error not to grant the motion for directed verdict made by defendant.

The exceptions raising these issues should be sustained, the judgment of the Circuit Court reversed, and the complaint dismissed.

MR. JUSTICE BAKER concurs.